# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| IN RE: CITIMORTGAGE, INC., HOME AFFORDABLE MODIFICATION PROGRAM ("HAMP") LITIGATION | No. MDL 11-2274-DSF (PLAx)<br><br>**ORDER RE DEFENDANT'S MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER** |

This action primarily involves defendant's Home Affordable Modification Program ("HAMP"), and allegations that defendant made false promises to help borrowers modify their home loans, and/or repudiated loan modifications. Plaintiffs' class certification motion is due no later than February 5, 2013.[1] Defendant has now filed a Motion in which it seeks to quash plaintiffs' subpoena served on non-party Freddie Mac, or in the alternative, the entry of a protective order staying any enforcement of that subpoena. The Court has reviewed and considered the pleadings submitted by the parties in connection with the Motion, and has considered the comments and argument presented at the January 29, 2013, hearing. As set forth below, the Court **denies** the Motion.

---

[1] The parties have filed a stipulation with the District Judge to extend the filing deadline for the class certification motion to April 17, 2013, which, if granted, would result in a hearing on that motion in August, 2013, or later.

Defendant argues that plaintiffs' subpoena seeks documents that this Court has previously determined are not to be produced at this stage of the litigation, as they do not relate to plaintiffs' anticipated motion for class certification. Defendant further argues that the subject documents implicate governmental privileges that the relevant agencies are considering whether to assert. In particular, the Court on June 7, 2012, ordered the production by defendant of certain documents focused on class-related issues, but denied production of documents that did not pertain to the anticipated class certification motion. One category of documents that defendant was not ordered to produce to plaintiffs related to documents that defendant had received from or provided to MHA-C (Making Home Affordable Compliance), a division of Freddie Mac, which audits the operations of major national banks to determine compliance with the rules of HAMP. Plaintiffs sought reconsideration of this and other portions of the June 7, 2012, Order; this Court clarified the Order as to the MHA-C documents and advised that the documents need not be produced. Plaintiffs' motion for review was denied by the District Judge. Plaintiffs then served a subpoena on Freddie Mac,[2] in which they essentially seek those MHA-C documents as to which their motion to compel was denied.[3] Freddie Mac objected to the subpoena on multiple grounds, including relevance, burden and governmental privilege. Declaration of Steven E. Rich in Support of Motion, Ex. E. Defendant argues that the subpoena is simply an "end-run" around the prior orders of this Court, and that plaintiffs should not be allowed to obtain, through a Rule 45 subpoena, those documents that they have been precluded from obtaining by this Court. As previously argued by defendant, the documents are not relevant at this time, and in any event plaintiffs "must first obtain a decision from the [Office of the Comptroller of the Currency] and the Treasury Department on whether the

---

[2] Defendant explains that Freddie Mac administers the subject HAMP, and serves as the government's compliance agent in this regard. Freddie Mac created an independent division, MHA-C, to evaluate and report on compliance by servicers with HAMP. In that role, it obtains confidential and proprietary information from its servicers, audits servicers, reviews loans, and prepares "observations" to which servicers respond. Motion, at 3-4.

[3] The subject subpoena was issued by the District Court for the District of Columbia. The parties have agreed to have this Court rule on defendant's Motion. In light of the multi-district nature of this case, and the relief being granted herein, the Court finds it appropriate to do so. See, e.g., In re Welding Rod Products Liability Litigation, 406 F.Supp.2d 1064, 1066 (N.D. Ca. 2005).

1  materials are subject to the OCC's statutory bank examination privilege and other applicable
2  privileges." Motion, at 10-11.[4] The Court already ordered that plaintiffs "must first exhaust all
3  administrative procedures and submit requests to use the documents in this litigation to the . . .
4  OCC, pursuant to federal regulations[.]" See June 7, 2012, Order, at 13. At the hearing on the
5  Motion, the parties advised the Court that the OCC is actively working on responding to plaintiffs'
6  request for documents. According to defendant, the Department of Treasury has also been
7  notified of the subpoena and may have objections as well. Motion, at 12. Thus, defendant at a
8  minimum seeks a stay of the subpoena until such time as both Freddie Mac and Treasury have
9  had the opportunity to assert any governmental privileges.

10       Plaintiffs respond that the Motion contravenes the District Judge's order that discovery in
11 this action not be bifurcated, that defendant is relying on a misinterpretation of the June 7, 2012,
12 Order, and that defendant is simply attempting to delay discovery. The subpoena seeks
13 documents from Freddie Mac containing HAMP program data concerning defendant's mortgage
14 loan, mortgage modification and mortgage foreclosure operations, including documents prepared
15 by its MHA-C division. Opposition, at 1. Plaintiffs contend that the subject documents are relevant
16 to this action, as they "will shed light on [defendant's] practices in implementing HAMP."
17 Opposition, at 4. They also repeat their earlier contention that the documents may be relevant to
18 class certification. Opposition, at 5, 11. Plaintiffs dispute defendant's position that this Court
19 found that the requested documents are not yet relevant to the case, and that they cannot obtain
20 them from any source until class certification occurs. Instead, according to plaintiffs, the June 7,
21 2012, Order simply prioritized discovery, and identified those documents to be produced by the
22 original deadline; no restrictions were placed on when other documents should be produced or

---

[4] Defendant relates that it is supervised and regulated by the OCC, and that it is required to comply with HAMP's requirements, including all MHA-C reporting requirements. It asserts that "[s]upervisory communications" between it and the OCC are subject to the bank examination privilege, that it inquired of the OCC if it would be asserting a privilege over the MHA-C documents, that the issue is being presented to the OCC for consideration, and that submissions of positions would be completed by December 22, 2012. Motion, at 5-6. Defendant further reports that it and plaintiffs "have already made submissions to the OCC on the privilege issue," and that "the OCC and Treasury are in a position to decide whether to assert any privilege if and when the MHA-C documents are ordered produced in this litigation." Reply, at 5.

3

whether plaintiffs were restricted from obtaining documents from other sources. Plaintiffs further assert that defendant's agreement to produce all relevant documents from all requests that "hit upon the agreed search terms," and the fact that defendant included documents covered by the bank examination privilege on its privilege log, indicates that even defendant believes that the subject documents are relevant and responsive to requests to which it must currently respond. Next, as to defendant's position that the OCC and Treasury may claim various privileges over the documents, plaintiffs point out that the parties completed their submissions to the OCC on December 26, 2012, concerning whether the OCC is claiming that any of the MHA-C documents are non-public OCC information; and that Freddie Mac notified Treasury of the subpoena and that Treasury may have objections but that neither Freddie Mac nor Treasury, and in fact no government agency, has yet to assert a privilege over the subject documents. Plaintiffs urge that any such objections be resolved if and when they are actually made; granting the Motion would only serve to delay resolution of this important issue. Plaintiffs further submit that defendant has no standing to assert the bank examination privilege and thus no standing to move to quash the subpoena on this ground; that, unlike the OCC, Freddie Mac does not have a formal administrative procedure to request the documents; and that Treasury can assert any privilege through Freddie Mac, after which plaintiffs can exhaust any administrative remedies.[5]

Finally, plaintiffs argue that the OCC and Treasury should be provided with an opportunity to intervene or assert a position in connection with the subpoena. In that manner, they would be given the opportunity to assert a privilege if appropriate. This would advance the resolution of the issues of which entities are asserting a privilege over the documents, and if the privilege is valid.

First, the Court concludes that in the circumstances presented here defendant has standing to enforce this Court's orders and rules, including by moving to quash a third party subpoena that may violate those orders. See Hartz Mountain Corp. v. Chanelle Pharmaceutical Veterinary

---

[5] Defendant represented at the hearing that a request for documents from Treasury should be made pursuant to 31 C.F.R. § 1.11; plaintiffs responded that a request is not a prerequisite to seeking documents from Treasury, and that any objections to production can be addressed if and when asserted by Treasury. Defendant indicated that while it believes the request should be made in advance, the request could be made either in advance, or at a later time.

4

1  Products Mfg. Ltd., 235 F.R.D. 535, 536 (D. Me. 2006); Auto-Owners Ins. Co. v. Southeast
2  Floating Docks, Inc., 231 F.R.D. 426, 428 (M.D. Fla. 2005). Plaintiffs' standing challenge in this
3  regard is rejected. Next, the fact that defendant may have already provided certain documents
4  beyond those ordered by the Court last June, and/or listed documents in a privilege log, does not
5  compel a conclusion that it has waived its objections to production of the subject documents. The
6  Court agrees with defendant that these efforts show its attempt to cooperate in the discovery
7  process, not obstruct it.

8  Plaintiffs, however, are correct that the Court in the June Order sought to prioritize the
9  massive amounts of discovery that defendant would be responsible to produce (focusing first on
10 the class certification documents), and that the Order by no means meant that the subject MHA-C
11 documents were not relevant to this action. Neither did the Order indicate that non-class related
12 discovery would wait until after a **determination** of the class issue, as asserted by defendant; it
13 simply did not require production at that time. The Court did not instruct that the non-prioritized
14 discovery could not proceed prior to certification, and while it concluded that it made sense for the
15 parties to initially focus their discovery efforts on those documents related to class certification,
16 the Court did not explicitly prohibit non-class related discovery until after certification. Neither did
17 the June 7, 2012, Order prohibit plaintiffs from serving the subject subpoena on Freddie Mac at
18 some point in the discovery process. The Motion boils down to answering the question of whether
19 that point in time has arrived. The Court concludes, as to the MHA-C documents, that it has.

20 Many months have passed since entry of the June Order, and much discovery has been
21 produced since then. Based on the Court's discussion with the parties on January 15, 2013, it
22 appears that multiple pre-certification discovery issues remain to be resolved. While the Court still
23 believes that those issues should be the focus of the parties' attention, the Court also concludes
24 that the process of addressing the MHA-C documents should not wait until the class certification
25 motion is resolved.[6] Indeed, plaintiffs began the process of addressing the MHA-C documents

---

[6] Defendant at the hearing was unable to articulate how it would be involved in any privilege issues that may be raised by Freddie Mac, Treasury and/or the OCC, as defendant is not the holder of the privilege over the subject documents. Thus, the Court's intention that defendant

with the OCC in November, 2012; the parties were then required to submit their positions concerning production of the documents; and as of this date, two months later, the issue has not been resolved. Neither could the parties represent precisely when the OCC would decide the matter. Further, it is reasonable to believe that once the OCC issues its decision concerning the documents, plaintiffs may challenge the OCC's assertion of privilege, if any. Thus, a speedy resolution is not likely, and deferring this issue until after the certification motion is determined would needlessly delay this litigation. The same is true of efforts to obtain the documents through Treasury. It is likely that once it is faced with the request for the MHA-C documents by way of the subpoena on its agent Freddie Mac, it will initiate a process (if it has not already done so) to determine whether to assert any privileges or other objections to production.[7] But these determinations take time, and it makes sense to now move this issue forward.

Defendant urges that even if the documents can be sought pre-certification, the subpoena should be quashed, or its enforcement stayed, until the governmental institutions supervising defendant (OCC and/or Treasury) can determine whether they will assert a privilege over any of the documents, and that the Court should not require the agencies to actually assert the privilege at this time. The Court agrees with defendant that the better approach is to give the agencies a chance to assert any privilege before seeking relief from the Court. See, e.g., In re JPMorgan Chase Mortgage Modification Litigation, 2012 WL 5947757, *2 n.1 (D. Mass. Nov. 27, 2012); In re Countrywide Financial Corp. Sec. Litig., 2009 WL 5125089, *2 (C.D. Cal. Dec. 28, 2009). But leaving the agencies to their own devices and schedules may result in unreasonable delays in this action. Rather, not quashing the subject subpoena will allow the process of resolving assertions

---

remain focused on class certification discovery may not be thwarted while these governmental entities decide whether or not to assert any privilege.

[7] Plaintiffs should determine if the procedures set forth in 31 C.F.R. § 1.11 may hasten the process.

of privilege and production to begin now, which in turn will serve to propel this litigation forward. Accordingly, the Motion is **denied**.[8]

DATED: January 31, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] By denying the Motion, the Court is merely declining to quash the subpoena on Freddie Mac and declining to enter a protective order that would stay enforcement of the subpoena pending the assertion of any privileges by the relevant entities. Nevertheless, the Court anticipates that those entities (OCC, Treasury and/or Freddie Mac) will each have the opportunity to assert any privileges prior to the production of any MHA-C documents. Those entities should be advised, though, that this issue should be addressed with all due diligence.

7