**MILBERG LLP**
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
NICOLE DUCKETT (SBN 198168)
ndfricke@milberg.com
300 South Grand, Suite 3900
Los Angeles, California 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

**MILBERG LLP**
ARIANA J. TADLER
atadler@milberg.com
1 Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile:   (213) 868-1229

**KLEIN KAVANAGH COSTELLO, LLP**
GARY KLEIN
SHENNAN KAVANAGH
KEVIN COSTELLO
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114
Telephone: 617.357.5500
Facsimile: 617.357.5030
Email: klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com

*Interim Lead Class Counsel*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE: CITIMORTGAGE, INC. HOME AFFORDABLE MODIFICATION PROGRAM ("HAMP") LITIGATION | Case No. 11-ml-2274 DSF (PLAx) |
| This document relates to: | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL** |
| Beverly King, et al. v. CitiMortgage, Inc.,      CV 10-3792 DSF (PLAx) | |
| Balbir Singh v. CitiMortgage, Inc.,      CV 11-8322 DSF (PLAx) | DATE:          August 26, 2013 |
| Leslie Barry, et al. v. CitiMortgage, Inc., | TIME:          1:30 pm  CRTRM.:     840  JUDGE:        Hon. Dale S. Fischer |

| | | |
|---|---|---|
| 1 | CV 11-8323 DSF (PLAx) ) | MAGISTRATE |
| 2 | Davidson Calfee, et al. v. CitiMortgage, ) Inc., ) | JUDGE:          Hon. Paul L. Abrams |
| 3 | CV 11-8324 DSF (PLAx) ) |
| 4 | Juan Silva, et al. v. CitiMortgage, Inc., ) CV 11-8325 DSF (PLAx) ) |
| 5 | Jo Ann Gastineau v. CitiMortgage, Inc., ) |
| 6 | CV 11-8326 DSF (PLAx) ) William T. Whiting v. CitiMortgage, Inc., ) |
| 7 | CV 11-8327 DSF (PLAx) ) |
| 8 | David G. DeRosa, et al. v. CitiMortgage ) Inc., ) |
| 9 | CV 11-8328 DSF (PLAx) ) |
| 10 | Robert Coons, et al. v. CitiMortgage Inc., ) CV 11-01655 DSF (PLAx) ) |
| 11 | ) |
| 12 | Joaquin Sequeira, et al. v. CitiMortgage ) Inc. ) |
| 13 | CV 11- 9179 DSF(PLAx) ) |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

DOCS\658546v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................1

II.   BACKGROUND ................................................................2

      A.    The TPP Agreement ...............................................2

      B.    Borrowers' Performance .........................................3

      C.    Citi Failed to Establish Procedures Consistent With HAMP ...........4

      D.    An Example: The Consequence Of Citi's Failure to Timely Underwrite the Permanent Modification ...........6

      E.    Plaintiffs And The Class Experienced A Common Injury So That Appropriate Damage Models Can Be Generated By Common Formulae ...........7

III.  ARGUMENT ...................................................................9

      A.    The Plaintiffs Satisfy the Requirements of Rule 23(a) ...........9

            1.    The Classes are Sufficiently Numerous ...................9

            2.    The Proposed Class(es) Present Common Questions ...........9

            3.    The Class Representatives' Claims are Typical ...........13

            4.    The Proposed Class Representatives Are Adequately Protecting the Absent Class Members ...........15

      B.    The Proposed Classes Meet The Requirements of Rule 23(b) ...........16

            1.    The Class Claims Satisfy Rule 23(b)(3) Standards ...........17

                  a.    Common Questions Predominate ...........17

                  b.    A Class Action is the Superior Method for Adjudication ...........20

                  c.    The Class is Ascertainable ...........23

            2.    Plaintiffs Also Satisfy of Rule 23(b)(2) ...........24

IV.   CONCLUSION ...................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acevedo v. CitiMortgage, Inc.*,
  No. 11-C-4877, 2013 WL 1283807 (N.D. Ill. March 26, 2013)........................16

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 ...........................................................................................17

*Baghdasarian v. Amazon.Com, Inc.*,
  258 F.R.D. 383, 390 (C.D. Cal. 2009) .............................................................21

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  270 F.R.D. 488 (N.D. Cal. 2010) .....................................................................16

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .....................................................................18, 19

*Bobbitt v. Acad.*,
  252 F.R.D. 327 (E.D. Mich. 2008).................................................................11

*Brady v. Deloitte & Touche LLP*,
  2010 U.S. Dist. LEXIS 37820, at *22 (N.D. Cal. Mar. 23, 2010) ....................21

*Cave v. Saxon Mortgage Services, Inc.*,
  No. 11-cv-4586, 2012 WL 1957588 (E.D. Pa. May 30, 2012)...................10, 11

*Celador Intern Ltd. v. Walt Disney Co.*,
  347 F. Supp. 2d 846 (C.D. Cal. 2004)............................................................12

*Comcast Corp v. Behrend*,
  No. 11-864, 2013 WL 1222646 (March 27, 2013) ("*Comcast*") ................18, 19

*Croseen v. CV Therapeutics*,
  No. C03-03709, 2005 U.S. Dist. LEXIS 41396 (N.D. Cal. Aug. 9, 2005)........14

*Del Campo v. Am. Corrective Counseling Serv., Inc.*,
  254 F.R.D. 585 (N.D. Cal. 2008) .....................................................................25

*Dupler v. Costco Wholesale Corp.*,
  249 F.R.D. 29 (E.D.N.Y. 2008) .......................................................................17

*Ewert v. Ebay, Inc.*,
No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010)...................................................................................................10

*Gaudin v. Saxon Mortgage Services, Inc.*,
2011 WL 5825144 (N.D. Cal. Nov. 17, 2011)...........................................10

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009)...................................................................13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1001 (9th Cir. 1998)...................................................................14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...................................................................22

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992)...................................................................14

*Hansberry v. Lee*,
311 U.S. 32 (1940) ...................................................................................15

*Harmsen v. Smith*,
693 F.2d 932 (9th Cir. 1982).......................................................................8

*Holmes v. Cont. Can Co.*,
706 F.2d 1144 (11th Cir. 1983).................................................................16

*In re Chase Bank USA, N.A., "Check Loan" Contract Litig.*,
274 F.R.D. 286 (N.D. Cal. 2011) ..............................................................20

*In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litigation*,
No. ML 11-02274 DSF (PLA), 2012 WL 1931030 (C.D. Cal. Apr. 17, 2012)................................................................................................2, 10

*In re New Motor Vehicles Canadian Export*,
No. MDL 1532, 2006 WL 623591 (D. Me. Mar. 10, 2006) .......................17

*Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris Inc.*,
182 F.R.D. 523 (N.D. Ohio 1998)..............................................................11

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999)...................................................................17

iii

*Jordan v. Paul Financial,*
LLC, 285 F.R.D. 435 (N.D.Cal. 2012)................................................................8

*Keegan v. Am. Honda Motor Co,*
284 F.R.D. 504 (C.D. Cal. 2012) .............................................................14, 23

*King v. Citimortgage, Inc.,*
No. CV-10-3792 (C.D. Cal. Mar. 3, 2011) ..........................................................2

*Klay v. Humana, Inc.,*
382 F.3d 1241 (11th Cir. 2004) ........................................................................20

*Lemon v. Int'l Union of Operating Eng'rs,*
216 F.3d 577 (7th Cir. 2000) ............................................................................16

*McReynolds v. Merrill Lynch,*
672 F.3d 482 (7th Cir. 2012) ............................................................................20

*Menagerie Prods. v. Citysearch,*
No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768 (C.D. Cal.
Nov. 9, 2009) ...............................................................................................10, 17

*Montanez v. Gerber Childrenswear, LLC*, No. 09-7420 DSF, 2011 U.S. Dist.
LEXIS 150942, at *8-9 (C.D. Cal. Dec. 15, 2011) ...............................14, 18, 19

*Murray v. New Cingular Wireless Servs.,*
232 F.R.D. 295 (N.D. Ill. 2005) *aff'd*, 523 F.3d 719 (7th Cir. 2008) ...............16

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
238 F.R.D. 482 (C.D. Cal. 2006) ......................................................................19

*O'Connor v. Boeing North American, Inc.,*
184 F.R.D. 311 (C.D. Cal. 1998) ......................................................................23

*Rodriguez v. Hayes,*
591 F.3d 1105 (9th Cir. 2010).........................................................................14

*Schull v. CitiMortgage, Inc.,*
No. 11-15643, 2012 WL 4498498 (E.D. Mich. Sept. 28, 2012).......................16

*Shellman v. Countrywide Home Loans, Inc.,*
No. 1:05-CV-234-TS, 2007 WL 1100795 (N.D. Ind. Apr. 12, 2007) ..............15

iv

*Social Servs. Union, Local 535 v. Cnty. of Santa Clara*,
    609 F.2d 944 (9th Cir. 1979) ............................................................................. 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 9, 15

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ...................................................................... 17

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ........................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ("*Wal-Mart*") .................................................... passim

*Walker v. Life Ins. Co. of the Sw.*,
    2012 U.S. Dist. LEXIS 186296 (C.D. Cal. Nov. 9, 2012) ............................... 21

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .................................................................... 24, 25

*Wigod v. Wells Fargo Bank*,
    673 F.3d 547 (2012) .......................................................................................... 10

*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ......................................................................... 21

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .................................................................... 18, 19

**STATE CASES**

*Arce v. Kaiser Foundation Health Plan, Inc.*,181
    Cal.App.4th 471 (2010) .................................................................................... 12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) .......................................................................... 12

*Diamond Crystal Brands, Inc. v. Backleaf LLC*,
    60 Mass. App. Ct. 502 (2004) .......................................................................... 13

*Schoendorf v. U.D. Registry, Inc.*,
    97 Cal. App. 4th 227 (2002) ............................................................................ 13

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION
DOCS\658546v1

**STATE STATUTES**

Cal. Civ. Code § 1785.25(a) ................................................................................. 13

California Business and Professions Code § 17200 ............................................... 12

**RULES**

Fed. R. Civ. P. 23(a)(2) ...................................................................................... 9, 13

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 15

Fed. R. Civ. P. 23(b)(1), (2) ...................................................................................... 9

Rule 23 ................................................................................................... 15, 20, 23

Rule 23(a) .......................................................................................................... 1, 9, 16

Rule 23(b) ......................................................................................................... 1, 16, 24

Rule 23(b)(1) .............................................................................................................. 16

Rule 23(b)(2) ............................................................................................... 16, 17, 24

Rule 23(b)(3) ....................................................................................................... passim

Rule 23(c)(4) .............................................................................................................. 20

Rule 23(c)(4)(A) ........................................................................................................ 20

Rule 23(h)(2) .............................................................................................................. 25

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

DOCS\658546v1

## I.   INTRODUCTION

This Multi-District Litigation includes eleven cases in which Plaintiffs seek to enforce agreements they made with CitiMortgage, Inc. ("Citi").  Like all banks, Citi does not hesitate to enforce contracts against borrowers when doing so is in its interest.  Citi relies on the plain text of its form loan contracts to collect payments, charge fees, adjust interest rates, or foreclose on borrowers' homes.  There should be no difference in the normative rules of contract when, as here, it is borrowers who seek to enforce form agreements against Citi.

Each Plaintiff and putative class member received a written Trial Period Plan ("TPP") from Citi.  The TPP is a form contract providing a common basis for the claims at issue.  The central common question is whether Citi breached TPPs by failing to act within the Trial Period expressly set forth in each agreement.

Tens of thousands of other Citi borrowers experienced identical frustrations to those of the named Plaintiffs.  For the reasons described below, the class that Plaintiffs' propose should be certified for relief on the breach of contract claim in the eight states in which claims are pending and for the ancillary claims set out in the Third Amended Complaint. (Doc. No. 111)[1]  The proposed class satisfies the four requirements of Rule 23(a) as well as each prong of Rule 23(b).

Citi maintains a rich data set—including data that it is legally required to report to the Department of the Treasury—that covers every aspect of its HAMP processing. As described below, Citi's voluminous data allows the Court to ascertain the class, simplifies the process of trying this case, and is more than sufficient for calculation of damages.

---

[1]  At present, Plaintiffs are not seeking certification of a subclass of borrowers whose permanent modification agreements were repudiated. Those claims are retained in the complaint as individual claims only, in the alternative.  Nor are Plaintiffs seeking certification of claims for breach of loan contracts other than the TPP at this time.

## II.      BACKGROUND

The Court is well versed in the factual background of this matter. *See King v. Citimortgage, Inc.*, No. CV-10-3792 (C.D. Cal. Mar. 3, 2011) (order denying Citi's motion to dismiss in underlying action) (King Doc. No. 70; *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litigation*, No. ML 11-2274 DSF (PLAx), 2012 WL 1931030, at *6 (C.D. Cal. Apr. 17, 2012) (Order granting, in part, and denying, in part, motion to dismiss the MDL complaint); *see also* MDL Doc. No. 221 (order granting, in part, and denying, in part, Motion to Dismiss Third Amended Complaint).[2]  This section summarizes the most relevant facts for class certification.

### A.      The TPP Agreement

The TPP Agreements that lie at the center of Plaintiffs' allegations are form contracts between Plaintiffs and Citi. *See* Ex. 15.[3]  As noted above, the Court has already thrice reviewed the terms of the form TPP Agreement and ruled that it is an enforceable contract, even when Citi does not execute it. Discovery now shows that Citi ███████████████████████████████████████████ ████████████████████. Ex. 5 at 107:16-109:13. Left to decide at the merits stage of this litigation is the nature and timing of the performance required of Citi under the TPP Agreement. These are common questions governed by form contract language.

The promise on which Plaintiffs' claims rest is made explicit from the very first sentence of the TPP Agreement:

> If I am in compliance with this Trial Period Plan, and my representations in Section 1 continue to be true in all material

---

[2] References herein to "MDL Docket No." refer to this MDL, Case No. 11-ml-2274 (C.D. Cal.)   All other references are identified by the case in which the docket entry arises.

[3] References herein to "Ex." refer to the Exhibits attached to the Declaration of David Azar, which is filed contemporaneously.

respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3. . . .

Ex. 15.  The TPP Agreement is, in unequivocal written terms, a contract of finite duration.  The "Trial Period" is expressly defined on page 2 as "the period (the 'Trial Period') commencing on the Trial Period Effective Date and ending on *the earlier of*: (i) the first day of the month following the month in which the last Trial Period Payment is due (the 'Modification Effective Date') or (ii) the termination of this plan . . . ." *Id.* at § 2 (emphasis added). The only conclusion that can be drawn from this language is that the Trial Period closed on a date certain: the Modification Effective Date. Underscoring this point, the TPP Agreement provides that "TIME IS OF THE ESSENCE." *Id.* at §§ 2, 2(A) (emphasis in original). The term "Trial Period," used throughout the TPP, applies to both the borrowers' and lenders' contractual duties. *Id*. at §§ 2(D), 2(E). Among the provisions that employ the term Trial Period are those that describe how the borrower's payments will be credited (or not). *Id.* §§ 2(D), 2(E).

The performance required by Citi within this finite period is also stated in the TPP Agreement. Citi is to provide a "signed copy of the Plan and Modification Agreement by the Modification Effective Date" *or* "a written notice that [the borrower] do[es] not qualify for the Offer." *Id.* at 1 (second first two full paragraphs).  Consistent with this language, Citi may not wait for some indeterminate number of months after the close of the contractual Trial Period to inform Plaintiffs whether or not they will receive a permanent HAMP modification.  Yet, this is precisely what Citi did.

## B.    Borrowers' Performance

Each borrower in the proposed class accepted, signed and returned a TPP Agreement to Citi, and timely made each of the required monthly payments.  The TPP Agreement also required borrowers to provide documentation necessary to

verify Citi's initial eligibility finding.  Where a particular borrower either failed to tender one of the trial payments in the month in which it was due, or failed to return specific documentation Citi requested, Treasury directed Citi—consistent with the terms of the TPP Agreement—to issue a timely denial at the close of the Trial Period.  Ex. 15 at 1 (TPP describes plan of limited duration requiring a permanent modification or written denial); Ex. 13 at 4 (stating that "[t]he servicer must consider the Trial Period Plan to have expired if the borrower has not submitted the required documentation by the end of the Trial Period"); Ex. 14 at 6 (Treasury Report indicating that "[p]rogram guidance directs servicers to cancel or convert trial modifications after three or four monthly payments, depending on circumstances").

For each Plaintiff and each class member, Citi failed timely to provide either a permanent loan modification agreement or a written denial.  As described below, predictable injury leading to foreseeable damages followed. *See* section II.E., *infra*.

## C.    Citi Failed to Establish Procedures Consistent With HAMP

Citi failed to establish or follow procedures necessary for timely decisions within the contractual Trial Period.  The TPP Agreement spells out the precise length of the Trial Period, but in all circumstances that period was contractually required to end by the Modification Effective Date.  Nevertheless, the discovery record shows that Citi maintained a policy ███████████████████████████████████████████████████████████████████████████████████████████████████████  *See* Ex. 5 at 247:10-248:13, 251:09-251:25; Ex. 16 at 225140 (Citi flow chart shows ██████████████████████████████████████████████████████).

Citi's uniform delay made timely decisions on permanent modifications virtually impossible. One of the forms required to determine HAMP eligibility, the IRS's Request for Transcript of Tax Return (4506-T), can only be used to obtain a

tax transcript for 60 days.[4]  HAMP rules required borrower income documents and bank statements to be less than 90 days old as of the date that Citi was performing the underwriting process.  *See* Ex. 3 at 2, 5.  Thus, Citi's practice of delaying underwriting created the near certainty that borrower documents submitted at the outset of the Trial Period would become stale by the time Citi evaluated them.  As Citi acknowledges, when this occurred, ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████  Ex. 10 at 217:19–219:02; *see* Section II.D. *infra* (example of how these problems lead to improper pretextual denials).

The inevitability of stale documents was not the only systemic Citi failure that caused delay in the HAMP process inconsistent with the promise in the TPP. Borrowers frequently complained that they sent documents that were not uploaded into Citi's servicing system.  Ex. 5 at 122:11-122:19, 123:06-09, 117:21-118:10; Ex. 17 at 00859164-66 ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████.  Citi was aware of its internal gaps in contacting borrowers for incomplete or missing documents.  *See* Ex. 18 at 00857364 (describing the document collection process a ███████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████.").  Citi was also aware that ████████████████████████████████████████████████████. Ex. 5 at 116:09-19, 117:21-118:10.  Similarly, Citi was aware that its vendor was unable to handle the volume of incoming borrower documents.  *See* Ex. 7 at 70:15-71:15; Ex. 19 at 00415321-25 (acknowledging that ████████████████ ████████████████████████████████████████████████████).

---

[4] Ex. 3 at 7. A sample signed and returned form is attached as Exhibit 26. By IRS requirements specified on the reverse side of the form, Citi had only 60 days to obtain a tax transcript. *See* "Signature and Date" information, middle column, p. 2.

*See* Ex. 20 at 02331564-66.

*See* Ex. 7 at 71:16-22.

### D.   An Example: The Consequence Of Citi's Failure to Timely Underwrite the Permanent Modification

Plaintiff Karen Grover's situation is typical and illustrative of the consequences of Citi's systemic underwriting delays. Ms. Grover was current on her loan when she applied for a HAMP modification due to a loss of employment income. Ex. 21 at 041727, 041729. Ms. Grover was initially approved in August, 2009, for a three-month TPP to begin October 1, 2009. Ex. 15 at 41722. Citi received all of the required documentation, including a signed and completed Request for Transcript of Tax Return ("4506-T") and her first TPP payment by October 1, 2009. Ex. 8 at 237:05-240:11. At that point, Citi told her that it would notify her if further information was necessary "within approximately 7 days." *Id.*

Then, for nine months, Citi failed to evaluate Ms. Grover for a permanent HAMP modification. *Id. at* 240:20-242:03. During that period, Ms. Grover paid the TPP amount every month, Ex. 4 at Appendix 4C,[5] but received collection notices demanding past due amounts and delinquency fees. Ex. 23.

Because of Citi's delay, Ms. Grover's 4506-T expired, after 60 days by

---

[5] On several occasions, Citi notes show it told Ms. Grover to continue paying the modified amount, even after the MED passed and while it reported her loan as past due to credit agencies. Ex. 22 at CITI HAMP MDL 0003070 and CITI HAMP MDL 0003071 (

" (01/04/10, p. 147).

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

operation of law.  *See* n. 4, *supra*.  In May, 2010, Citi notified Ms. Grover that she had not provided a 4506-T, ignoring that it had let the submitted form expire.  Ex. 24. Citi then requested her most recent bank statements and other documents despite Ms. Grover having submitted them at the outset.  Ex. 8 at 243:25–248:06. As Citi was aware ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 10 at 217:19–219:02.

Indeed, that is what happened to Ms. Grover. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 8 at 249:19-250:02.  In July, 2010, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 9 at 109:22-110:03; Ex. 25.  Because the original income documents were nine months old, Citi considered them stale and apparently treated them as "missing" in order to justify a pretextual denial.

At the end of the process, Citi's own failures led to the denial. Yet, Citi demanded more than $17,000 from Ms. Grover to cure her "default."  Ex. 29. Under Citi's flawed administration of her HAMP modification process, Ms. Grover had gone from being current on her mortgage to being hopelessly behind. In addition to a lump sum of past due interest, Citi added fees and costs to her account that resulted from its own failure to timely evaluate the loan for permanent modification. *See id.*

### E.   Plaintiffs And The Class Experienced A Common Injury So That Appropriate Damage Models Can Be Generated By Common Formulae

Under the TPP Agreement, all class members shared the common entitlement to a timely decision from Citi. Basic contract law accounts for the injury that resulted from Citi's failure in this regard, whether the borrower was entitled under the TPP Agreement to a timely permanent modification or to a

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

1   timely denial.

2       While Plaintiffs are not required to specify damages with precision at the

3   class certification stage for the reasons discussed below, it is plain that there are

4   relevant contract damage theories as well as sufficient data available to generate

5   formulae that can reasonably calculate damages on virtually any common theory

6   that the Court might ultimately conclude is appropriate. Ex. 4 at ¶ 88.[6] In this

7   regard, it is important to note that Citi generated the hypothetical terms of the

8   appropriate permanent modification under the HAMP waterfall before a

9   modification was ever granted, and it reported those terms to Treasury. Ex. 11 at

10  129:15-130:13 (noting that those terms are ███████████████████████

11  ███████████████. That information can be used to predict the scenario that

12  would have been in place if an improperly denied modification had been granted.

13  Moreover, where a permanent modification was granted late, Citi necessarily

14  calculated the actual terms of the modification. *Id.* at 156:11-158:24.  Those terms

15  are thus available to evaluate the consequences of Citi's late performance for the

16  group of class members whose modifications were delayed.    Finally, the

17  ████████████████████████████████████████████. *See* Ex. 4,

18  Appx 4A and 4B.

19      The existence of this data in Citi's systems provides information sufficient

20  for the core of any damage model because one can calculate the difference between

21  the stream of payments due under the original loan note compared with either 1)

22  those that would have been due if the loan had been modified (for those entitled to

23  modification) or 2) the amounts accepted by Citi that should have been treated as

24  full contractual payments (for those who made ongoing payment until an untimely

25  denial).  Ex. 54 at pp. 36-37; Ex. 4 at ¶ 88.  Thus, regardless of eligibility issues,

---

[6] *Jordan v. Paul Financial*, LLC, 285 F.R.D. 435, 466 (N.D.Cal. 2012) ("the Court need not decide the precise method for calculating damages at this stage."). Ultimately, to be awarded, damages need not be calculated with mathematical certainty. *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982).

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

the contractually due payment under the original loan note and mortgage can be compared, for all class members, with that which would have been due under terms that Citi was uniformly required to calculate and which exist as datapoints in Citi's records. *Id.*

## III.   ARGUMENT

Plaintiffs seek certification of eight (8) statewide classes of homeowners based on the class definition set forth in the accompanying motion.[7] The proposed statewide classes meet all of the requirements of Fed. R. Civ. P. 23(a) as well as the requirements of Fed. R. Civ. P. 23(b)(1), (2) and/or (3).

### A.   The Plaintiffs Satisfy the Requirements of Rule 23(a)

#### 1.   The Classes are Sufficiently Numerous

The methodology of Plaintiffs' expert, as applied to Citi's electronic records, identified approximately 41,000 loan accounts that meet the requirement of the proposed classes because they received untimely approvals or denials. *See* Ex. 4 at ¶¶ 72-73.

#### 2.   The Proposed Class(es) Present Common Questions

The commonality prong of Fed. R. Civ. P. 23(a)(2) is satisfied when there is at least one question of law or fact common to the class.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Even after the Supreme Court's clarification of this requirement in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Wal-Mart*"), class certification requires no more than a single common question of law or fact, the answer to which will "drive the resolution of the litigation." *Id.*

Here, the form TPP Agreement serves as the factual platform from which

---

[7]  California, Florida, Illinois, Iowa, Maryland, Massachusetts, New Jersey and Pennsylvania**.**

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

common issues spring.  "Courts routinely certify class actions involving breaches of form contracts."  *In re Med. Capital Sec. Litig.*, No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011). Indeed, myriad cases in the Ninth Circuit hold that "'claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.'"  *Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768, at *36 (C.D. Cal. Nov. 9, 2009); *see also Ewert v. Ebay, Inc.*, No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838, at *21 (N.D. Cal. Sept. 30, 2010).

Each class member's claim raises the common question of whether Citi's failure to render a decision at the close of the "Trial Period" constitutes a breach of form contract language.[8]  The common answer to this classwide question will drive the resolution of the litigation as envisioned in *Wal-Mart,* 131 S. Ct. at 2551—i.e., negative answer would be dispositive of each class member's contract claim, whereas a positive answer would lead to a series of subsequent common legal and factual questions regarding injury and relief.[9]  These questions need not be resolved at the class certification stage; however, recognition that the answer would apply generally across the class to drive the resolution of Plaintiffs' claims

---

[8] This Court has already ruled on the antecedent common question of whether the TPP Agreement itself can constitute an enforceable contract. *In re Citimortgage, Inc. Home Affordable Modification Program (HAMP) Litigation*, No. ML 11-02274 DSF (PLA), 2012 WL 1931030, at *6 (C.D. Cal. Apr. 17, 2012).

[9] Although the Court need not address the merits underlying the issue of what the TPP Agreement obligated Citi to do, Plaintiffs note that several courts have found that a timely decision was required.  Any other interpretation would plainly render the contract illusory, because Citi could always nullify the agreement by failing to make any determination at all. *See Wigod v. Wells Fargo Bank*, 673 F.3d 547, 563 (2012) ("Under this reading, a borrower who did all the TPP required of her would be entitled to a permanent modification only when the bank exercised its unbridled discretion to put a Modification Agreement in the mail."); *Cave v. Saxon Mortgage Services, Inc.*, No. 11-cv-4586, 2012 WL 1957588 at *5 (E.D. Pa. May 30, 2012) ("[Servicer]'s interpretation of the select portions of Sections 2.F and 2.G 'conflicts with the clear tenor of the remainder of the document and would render the other agreement promises illusory.'") *quoting Gaudin v. Saxon Mortgage Services, Inc.*, 2011 WL 5825144, at *4 (N.D. Cal. Nov. 17, 2011); *see also* Docket No. 182 at 9-14.

- 10 -

1   warrants certification.[10]  *See* Section II.E., *supra.*

2      Plaintiffs' promissory estoppel claims are grounded in the same written

3   promise as the contract claim. The reliance element of Plaintiffs' promissory

4   estoppel claim does not undermine commonality. By making the payments

5   required by the TPP Agreement, Plaintiffs relied on Citi's promise to render a

6   timely decision.[11] Common injury is present for the same reasons described above

7   with respect to the breach of contract claim. See section II.E, *supra.*

8      Both the claims for the implied covenant of good faith and fair dealing, for

9   residents of three states,[12] and the consumer protection act, brought for residents in

10  five states where applicable law applies,[13] arise from Defendant's failure to design

11  and implement procedures sufficient to meet its obligations to make timely

12

13  [10] As the Court noted in its April 17, 2012 Order, there is a "reservation in the TPP
    of Defendant's ability to verify the 'modified' TPP Plaintiffs' HAMP eligibility."
14  Doc. No. 67 at 8.  The addition of this language does not alter the common issues
    of law that arise from the TPP Agreement. Regardless of whether they were
15  tendered a "standard" or a "modified" TPP, Citi did not make the contractually
    mandated determination of the borrowers' eligibility within the time permitted by
16  the TPP.  The "modified" TPP merely added an additional prerequisite to
    permanent modification, it did nothing to remove or alter the affirmative language
17  limiting the Trial Period to a finite period of time that would be used to verify the
    borrower's eligibility and render a decision.  *Cave,*  2012 WL 1957588 at *7
18  ("even if Plaintiffs were not qualified for permanent modification, [the servicer]
    breached the TPP because it did not send Plaintiffs a timely written denial
19  explaining why they did not qualify.").  Plaintiffs do not believe that there are
    material differences in other versions of the TPP that Citi used during the class
20  period.  However, they reserve their right to propose subclasses if Citi points to
    other common versions of the TPP form in its Opposition to the extent those
21  versions contain differences that may impact the claims at issue for certain
    classmembers.

22  [11] *See, e.g., Bobbitt v. Acad.*, 252 F.R.D. 327, 342 (E.D. Mich. 2008) (Despite
    defendants' argument that plaintiffs' promissory estoppel claim "requires
23  individualized proof [of reliance], the Court is satisfied that the plaintiffs have put
    forth allegations and evidence that appears to follow a pattern and the people they
24  claim made the representations are largely the same people.") (internal quotations
    omitted); *Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris Inc.*, 182
25  F.R.D. 523, 535 n. 23 (N.D. Ohio 1998) (noting that "[c]lass action treatment is
    appropriate where the claims arise from standardized forms or routinized
26  procedures, notwithstanding the need to prove reliance)").

27  [12] California, Florida and Iowa.

28  [13] California, Florida, Illinois, Massachusetts, and New Jersey. *See* Ex. 12, UDAP
    Appendix for these five states.

decisions under TPP Agreements, particularly in light of the limited shelf life of the documents it collected from homeowners.  *See* Sections II.C., II.D., *supra*.

Under the implied covenant, the central common question is whether Citi acted in an unreasonable or arbitrary manner that effectively denied the class members the benefits of their TPP Agreements.  *See, e.g., Celador Intern Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004) (A breach of the implied covenant of good faith and fair dealing "involves unfair dealing, whether or not it also constitutes breach of a consensual contract term, prompted by a conscious and deliberate act that 'unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party.'") (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

Under the CPA, the common question is similar. For instance, whether Citi had a policy or practice of delaying underwriting of loan modifications until the last month of the Trial Period, thereby ensuring that borrowers do not receive a decision by the time promised, is a common factual question.  *See* II.C. and D., *supra*.  It is also a common question whether such a policy increased the likelihood that a borrower would end up in a cycle of repeated and duplicative document requests due to "stale" documentation. *Id.*  Likewise, it is a common question whether Citi's vendor problems were so serious as to create a systemic risk of undue delay in the modification review process.  The answer to these common factual questions will in turn yield common legal answers when applied to the applicable state's CPA. For each affected CPA class member, Citi's conduct goes beyond mere breach of contract, and constitutes unfair practices in violation of their state UDAP statute. *E.g.*, *Arce v. Kaiser Foundation Health Plan, Inc.*,181 Cal.App.4th 471, 489-90 (2010) ("A breach of contract in turn may form the predicate for a UCL claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent. With respect to the unfairness prong of California Business and Professions Code section 17200, appellate courts have recognized that a

systematic breach of certain types of contracts (*e.g.*, breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.")) (internal citations and quotations omitted); *Diamond Crystal Brands, Inc. v. Backleaf LLC*, 60 Mass. App. Ct. 502, 507 (2004) (coercive conduct associated with a breach of contract can constitute a violation of the state unfair trade practices law); *see also* Ex. 12.

The CCRAA prohibits any person from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows of should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). "'[A] report violates the [CCRAA] when it is *misleading or incomplete, even if it is technically accurate.*'" *Schoendorf v. U.D. Registry, Inc.*, 97 Cal. App. 4th 227, 239 (2002); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (Report can violate statute if "it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."). The question of whether Citi had a practice of falsely reporting loans as delinquent, even when borrowers were making the modified trial period payments, is a liability question that can be answered on a common basis for the class.[14]

### 3.    The Class Representatives' Claims are Typical

The purpose of the "typicality" requirement is to ensure that the named representative's interests "align" with those of the class. Fed. R. Civ. P. 23(a)(2);

---

[14] For four months, for example, Citi acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Ex. 27 at 00699716; Ex. 6 at 122:23-128:22, 135:07-136:10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.,* Ex. 6 at 33:23-37:22, 63:07-64:25, 129:14-134:20; Ex. 28. Plaintiffs also bring claims related to Citi's debt collection practices for statewide classes under Maryland and Iowa fair debt collection statutes. The claims are based on Citi's common collection conduct, in its foreclosure actions, of falsely representing loans as being due in amounts that ignored the changes in the amount of debt owed associated with Citi's TPP Agreements. *See* Doc. No. 182 at 21-24.

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As observed in *Wal-Mart*, the typicality analysis aids the Court in "'determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Wal-Mart*, 131 S. Ct. at 2551 n.5 (internal quotation omitted).   "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."   *Hanlon v. Chrysler Corp.*, 150 F.3d 1001, 1020 (9th Cir. 1998); *see also Montanez v. Gerber Childrenswear, LLC*, No. 09-7420 DSF (DTBx), 2011 U.S. Dist. LEXIS 150942, at *8-9 (C.D. Cal. Dec. 15, 2011) (quoting *Hanlon*).   "The test is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"   *Croseen v. CV Therapeutics*, No. C03-03709, 2005 U.S. Dist. LEXIS 41396, at *14 (N.D. Cal. Aug. 9, 2005) (quoting *Hanon*, 976 F.2d at 508); *see also Keegan v. Am. Honda Motor Co,* 284 F.R.D. 504, 524 (C.D. Cal. 2012) ("A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.") (citation omitted).   "Like the commonality requirement, the typicality requirement is 'permissive.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020).

Here, each proposed class representative shares attributes typical of each class member: each received a TPP Agreement from Citi; each accepted the agreement by execution and return; each timely made the required payments; and, in each case, Citi injured the borrower by breaching its promise to provide either an offer of a permanent loan modification or a written notice of denial at the close of the Trial Period.   These facts can be established from Citi's records using the same methodologies that Plaintiffs' expert proposes to use to identify the class.

- 14 -

*See* Ex. 4 at ¶ 87.  In the interest of economy and simplicity, Plaintiffs prepared an appendix listing the essential elements of their claims that each proposed class representative shares with putative class members and citing to the discovery record.  *See* Ex. 1.  Review of this appendix illustrates that the typicality element of Rule 23 is satisfied here.

**4.     The Proposed Class Representatives Are Adequately Protecting the Absent Class Members.**

An adequate representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Hansberry v. Lee*, 311 U.S. 32, 43 (1940).  The adequacy of representation inquiry depends upon two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton*, 327 F.3d at 957.

Here, neither Plaintiffs nor their counsel have conflicts with other class members. Plaintiffs and the other class members each entered into separate TPP Agreements with Citi; were subject to the same course of conduct; and were subject to the same form of injury from Citi's breach.  The Plaintiffs' and the class members' interests are aligned because "a victory for [them] is a victory for the class."  *Shellman v. Countrywide Home Loans, Inc.*, No. 1:05-CV-234-TS, 2007 WL 1100795, at *3 (N.D. Ind. Apr. 12, 2007).

Plaintiffs' counsels' interests are to establish that Defendant breached its contractual obligations and to obtain the fullest recovery possible for all class members.  The proposed class representatives retained counsel who are advancing the class' claims.  As this Court concluded when appointing them Interim Class Counsel, the law firms of Milberg LLP (which included Jeff Westerman of the since formed Westerman Law Corp., who remains involved) and Klein Kavanagh Costello, LLP, along with their Executive Committee, have extensive experience in class actions and similar complex litigation.  *See* MDL Doc. No. 7.1-7.15

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

(resumès).  There is no question that Class Counsel is "qualified, experienced and generally able to conduct the litigation."  *Social Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 947 (9th Cir. 1979) (footnote omitted).

Finally, the named Plaintiffs understand the essential factual and legal issues of the case and their responsibilities to the class.  *See Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005) (class representative need only have marginal familiarity with facts of case and need not understand legal theories) *aff'd*, 523 F.3d 719 (7th Cir. 2008).  As with the typicality element, Plaintiffs have created an Appendix for the convenience of the Court that summarizes evidence in the discovery record satisfying the adequacy element for each proposed class representative.  *See* Ex. 2.  On this basis, Plaintiffs are adequate class representatives.

**B.    The Proposed Classes Meet The Requirements of Rule 23(b)**

For a class to be certified, it must meet the requirements of Rule 23(a), as well as one of the prongs of Rule 23(b). This case meets each prong of Rule 23(b).[15] Thus, the Court also may certify a hybrid class under multiple prongs of the Rule.[16]

---

[15]  Rule 23(b)(1) certification is appropriate in light of the risk of inconsistent adjudications.  Reviewing just the recent case law for matters in which Citi is a party shows inconsistent adjudications that would require incompatible standards of conduct for Citi. *Compare, e.g.*, *Acevedo v. CitiMortgage, Inc.*, No. 11-C-4877, 2013 WL 1283807 (N.D. Ill. March 26, 2013) *with Schull v. CitiMortgage, Inc.*, No. 11-15643, 2012 WL 4498498 (E.D. Mich. Sept. 28, 2012).  Cases certified under 23(b)(1) often involve situations where courts do not agree on the proper outcome in light of common conduct or common legal issues. *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (certification of Rule 23(b)(1) class was appropriate because there was a risk that individual litigation would result in different conclusions). In the interest of brevity, Plaintiffs do not make additional argument under subsection (b)(1) here, but they reserve the right to do so in their reply brief.

[16]  Since there is "no…requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(a) allows an action to be maintained 'with respect to particular issues,' the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, so long as the resulting hybrid case can be fairly and effectively managed." *Holmes v. Cont. Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983); *see also Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000) ("The district court could certify a Rule

- 16 -

### 1.    The Class Claims Satisfy Rule 23(b)(3) Standards

The Court may certify a class under Rule 23(b)(3) if it finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. . . . [T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (citing Fed. R. Civ. P. 23(b)(3)).

### a.    Common Questions Predominate

Courts routinely find that predominance is met in cases about the meaning of written form contracts.  *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46 (E.D.N.Y. 2008) ("[T]he alleged breach of standard-form contracts are particularly appropriate for class action."); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("'[C]laims arising from interpretations of a form contract . . . present the classic case for treatment as a class, and breach of contract cases are routinely certified as such.'") (internal quotation omitted); *Menagerie Prods.*, 2009 U.S. Dist. LEXIS 108768, at *36 (same); Section III.A.2., *supra* (citing cases finding commonality under form contracts which equally support

23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages."). "As Judge Easterbrook of the Seventh Circuit has recognized, certification of separate classes for the injunctive aspects and the damages aspects of a lawsuit can ensure that money damages do not predominate over injunctive relief in a Rule 23(b)(2) class, for it 'achiev[es] both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects.'" *In re New Motor Vehicles Canadian Export*, No. MDL 1532, 2006 WL 623591, at *7 (D. Me. Mar. 10, 2006) (*quoting Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999)). The Supreme Court decision in *Wal-Mart*, limiting monetary relief under Rule 23(b)(2), enhances the importance of hybrid certification where, in a case like this one, both injunctive and monetary relief are appropriate.

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

1    predominance).

2           Common questions predominate as to the contract claim.  With respect to

3    liability, the overriding common question is whether Citi failed to perform its

4    contractual obligations in a timely way.  As discussed above on commonality, *see*

5    section III.A.2., *supra*, this central liability question can be answered on a common

6    basis for the class as a matter of law.  The common answer to this query will have

7    an overwhelming effect on the resolution of class claims.  The centrality of the

8    meaning of the TPP Agreement is the basis for predominance not just for contract

9    claims, but also for promissory estoppel.[17]

10          Citi is likely to argue that individual questions concerning injury or damages

11   predominate.  But it has long been the case that, in assessing whether common

12   questions predominate, a court's inquiry should be primarily directed toward the

13   issue of liability.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  As

14   the Ninth Circuit more recently reaffirmed, "[i]n this circuit … damages

15   calculations alone cannot defeat certification.  We have said that 'the amount of

16   damages is invariably an individual question and does not defeat class action. . . .'"

17   *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)

18   (internal quotations omitted).  This Court has agreed.  *See Montanez, supra*, U.S.

19   Dist. LEXIS 150942, at *12.

20          Citi may argue that the U.S. Supreme Court's ruling in *Comcast Corp v.*

21   *Behrend*, No. 11-864, 2013 WL 1222646 (March 27, 2013) ("*Comcast*") alters this

22   analysis.  But *Comcast* does not control here. First, as pointed out by the dissent,

23   *Comcast* "breaks no new ground on the standard for certifying a class action under

24

---

25   [17] Predominance for the breach of good faith and fair dealing claims as well as the
     CPA claims also requires consideration of Citi's failure to put procedures in place
26   to timely provide modification or denials.  These considerations support
     predominance because they were applied in the same way in every case.  Similarly,
27   the common procedures that underlie Citi's credit reporting and debt collection
     practices overwhelm individual questions under statutes that essentially provide for
28   strict liability based on conduct that violates specified proscriptions.

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

Federal Rule of Civil Procedure 23(b)(3)." *Id.,* 2013 WL 1222646 at *9 (Ginsburg, J. & Breyer, J., dissenting). Instead, "[t]he Court's ruling is good for this day and case only." *Id.* This observation is based on the Respondents' unique acquiescence that injury be proven on a classwide basis, even if common issues of liability overwhelmingly predominate. *Id.*

The dissent is also correct to point out that *Comcast's* highly fact specific finding that the Plaintiffs' proffered model failed to match their theory of antitrust impact does not alter the "well nigh universal" recognition that individual damages calculations do not ordinarily preclude class certification. *Id.* In other words, *Comcast*'s finding that the Respondents in that case failed to offer a model for properly measuring the antitrust impact, does not change the fundamental rule— articulated in *Blackie*, *Yokoyama*, *Montanez* and countless other cases—that individuation of damages does not defeat class certification where they are ascertainable by a proper common method.

*Comcast* is also distinguishable because the antitrust damages expert in that case was faced with the complex task of establishing what circumstances would exist in a "but for" world without the anticompetitive conduct. Here, unlike in *Comcast*, damages can be ascertained on a class-wide basis through data analysis and application of a common methodology, rather than through individual testimony. For the reasons discussed above in section II.E, *supra*, the core of the damage model is grounded in the difference between the stream of payments due under the original loan note and that which would have been due if Citi had not breached. The contractually due payment under one set of terms can be compared with those that would have been due under the set of terms that Citi was required to calculate during the HAMP process. Data points exist for each factor in the equation. *See* Section II. E., *supra*; *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494 (C.D. Cal. 2006) ("Particularly where damages can be computed according to some formula statistical analysis, or other easy or essentially

1    mechanical methods, the fact that damages must be calculated on an individual

2    basis is no impediment to class certification.") (quoting *Klay v. Humana, Inc.*, 382

3    F.3d 1241, 1259-60 (11th Cir. 2004)).

4         Finally, proceeding with class-wide adjudication of liability issues is the

5    most efficient and appropriate course for this matter.  The overwhelming value of a

6    common set of rulings on liability justifies certification under Fed. R. Civ. P.

7    23(b)(3). *Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996)

8    ("Rule 23 authorizes the district court in appropriate cases to isolate the common

9    issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular

10   issues."); *accord McReynolds v. Merrill Lynch*, 672 F.3d 482, 491 (7th Cir. 2012)

11   (certifying under Rule 23(c)(4) despite individual damages issues because, "at least

12   it wouldn't be necessary in each of those trials to determine whether the challenged

13   practices were unlawful").

14
15                   **b.    A Class Action is the Superior Method for Adjudication**

16        In addition to finding that common issues predominate among the class,

17   Rule 23(b)(3) requires "that a class action is superior to other available methods for

18   fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The

19   factors with respect to superiority are: (A) interests of class members to

20   individually pursue separate actions, (B) if class members have already

21   commenced litigation concerning the controversy, (C) desirability of converging

22   the matter into one action, and (D) manageability of a class action.  Fed. R. Civ. P.

23   23(b)(3).

24        Here, the costs—to class members, to the courts,[18] and even to Citi[19]—of

25   ─────────────────
26   [18]   Absent class treatment, the burden on the judiciary across many jurisdictions
     would be extreme.  *See In re Chase Bank USA, N.A., "Check Loan" Contract*
27   *Litig.*, 274 F.R.D. 286, 293  (N.D. Cal. 2011) (burden on the courts is appropriately
     considered).

28   [19]   Citi will likely disagree, not because it would be cheaper for it or the court
     system to adjudicate the individual actions, but because Citi considers it easier, in

─────────────────
PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

adjudicating class members' claims on an individual basis would far outweigh the recovery to which individuals might be entitled.  *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.")  Most individual class members are either unlikely or unable to pursue individual litigation due its high cost. *Baghdasarian v. Amazon.Com, Inc.*, 258 F.R.D. 383, 390 (C.D. Cal. 2009) (most class members cannot afford individual litigation against defendant).  Although the damages in question are not nominal amounts, the majority of class members, many of whom are facing foreclosure, cannot afford the sophisticated legal representation needed to bring individual suits against a large financial institution such as Citi.  *See Walker v. Life Ins. Co. of the Sw.*, 2012 U.S. Dist. LEXIS 186296 (C.D. Cal. Nov. 9, 2012).  Generally, homeowners seeking to avoid foreclosure have few resources to pay counsel hourly for a breach of contract case.  *See, e.g., Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. SACV 12–463 DOC(MLGx), US Dist LEXIS 67950 (C.D. Cal. May 15, 2012) (discussing scheme to take advantage of desperate homeowners facing foreclosure).  "'Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation,' and is certainly superior 'if no realistic alternative exists.'" *Brady v. Deloitte & Touche LLP*, 2010 U.S. Dist. LEXIS 37820, at *22 (N.D. Cal. Mar. 23, 2010) (quoting *Valentino*, 97 F.3d at 1234).

    Class treatment is not only superior; it is probably the only effective remedy available.  Azar Decl. at ¶ 3; *see Brady,* 2010 U.S. Dist. LEXIS 37820, at *22 (discussing class action as "superior to other methods of adjudication in that

balkanized litigation, to avoid responsibility for the multi-state impact of its actions.  Citi is aware that Plaintiffs, proceeding individually, are unlikely to have the resources to pursue discovery commensurate with those applied here, making Plaintiffs' success in individual litigation more difficult.

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

1   bringing separate suits for every class member against a large business entity such
2   as defendant would be cost prohibitive").   The Judicial Panel on Multidistrict
3   Litigation's proceeding transferring the claims to this Court, which Citi initiated,
4   reflects the efficiencies of concentrating the claims into one action. Doc. No. 1
5   ("Centralization will eliminate duplicate discovery; prevent inconsistent pretrial
6   rulings . . . ; and conserve the resources of the parties, their counsel, and the
7   judiciary.").

8        Citi may point to scattered actions across the country as proof that there are
9   class members capable of litigating these claims against it in individual lawsuits. [20]
10  These cases are only the tip of the iceberg in light of the enormity of the problem
11  Citi created. Citi also ignores that many of these lawsuits are filed *pro se*. *See, e.g.,*
12  *In re Ossman*, Adv. No. 1:11-AP-01634-MT, 2012 WL 315485 (Bkrtcy. C.D. Cal.
13  January 31, 2012). What Citi really wants is to continue to use its overwhelming
14  resource advantage to continue to beat these claims back one at a time.  That is not
15  an appropriate ground for refusing class treatment.  *Hanlon v. Chrysler Corp.*, 150
16  F.3d 1011, 1023 (9th Cir. 1998) (no advantage to individual members controlling
17  the prosecution of separate actions where "[t]here would be less litigation or
18  settlement leverage, significantly reduced resources and no greater prospect for
19  recovery").  Moreover, a class action will prevent the unfairness that would derive
20  from inconsistent judgments of individual suits. *See supra* at 17 n. 15.

21       The proposed class in this case is manageable. Plaintiffs' expert, Dr. Ian
22  Ayres of Yale Law School and Yale School of Management, describes how Citi
23  maintains substantial data in various databases sufficient to plot every aspect of

24

25

26  [20]  Regarding the scattered individual actions filed by putative class members
27  against Citi in various jurisdictions that address the issues involved in this lawsuit,
    if a class is certified, Plaintiffs will propose mechanisms for those individuals to
28  opt out of the class and proceed on an individual basis, if they so desire.

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

both Citi's performance and the borrower's compliance with a HAMP TPP.[21]  Ex. 4 at ¶¶ 49-59. Much of the relevant Citi data is legally required to be maintained and reported to the Department of the Treasury. *Id. at ¶* 50.  That data, particularly when it is cross-checked against other data fields that Citi acknowledges ███████████████████████████████████████████████████████████████████████ ███████████████████████████████. *Id*. at ¶¶ 69-82. ███████████████████████ ████████████████████████████████████████████████████████████ *Id*. at ¶¶ 83-84; Ex. 5 at 178:16-179:05.  The necessary trial would thus be relatively simple in light of available data, to the extent that legal issues cannot be resolved by summary judgment.  Most importantly for trial,  Citi data provides a basis to verify and conclusively determine issues relevant to injury and damages on a class-wide basis.  *See* section II.E., *supra*.

### c.     The Class is Ascertainable

Although  not  explicitly  mentioned  in  Rule  23,  "there  is  an  additional prerequisite to certification—that the class be ascertainable."  *Keegan,* 284 F.R.D. at 521.   In  other  words,  the  class  must  be  sufficiently  defined  so  that  it  is "administratively  feasible  to  determine  whether  a  particular  person  is  a  class member."  *O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 319 (C.D. Cal.  1998).    This  is  typically  a  concern  associated  with  the  manageability requirement of Rule 23(b)(3).

As  explained  in  the  Ayres  report,  Citi—like  all  HAMP  servicers—is required by Treasury to maintain comprehensive data on a borrower-by-borrower basis for all aspects of its program performance. Ex. 4 at ¶ 44.  The required data elements include information that traces the life cycle of each HAMP borrower throughout the process—from trial plan set-up, to borrower compliance with the

---

[21] Professor Ayres is an expert in econometrics and statistical analysis.  *See* Ex. 4 at ¶¶ 3-8 & Appendix 2 (listing qualifications and appending curriculum vitae). Among his many qualifications are his doctorate in economics and his dozens of books and scholarly publications employing statistical techniques.  *Id.*

1   trial plan, to the terms of the anticipated permanent modification if the trial plan is

2   successful, and trial plan outcomes. *Id.* at ¶¶ 50–56 (describing categories of

3   reporting required by Treasury).

4

5

6

7

8   . *Id.* at ¶¶ 57-59;

9   appendix 4A, 4B.

10       Dr. Ayres devised a straightforward methodology to identify class members

11   with Treasury data, supported by Citi's other internal data. *Id.* at ¶¶ 60-82. Indeed,

12   Citi confirmed that the Treasury data standing alone contains the information

13   necessary to identify all borrowers who entered into HAMP TPP Agreements, the

14   length of each borrower's Trial Period, whether they properly made each TPP

15   payment, the Modification Effective Date, and each borrower's TPP outcome. *Id.*

16   at ¶ 61; Ex. 11 at 133:4-13, 134:15-22, 156:11-158:24.   The class is thus

17   ascertainable.

18               **2.      Plaintiffs Also Satisfy of Rule 23(b)(2)**

19       Rule 23(b)(2) requires that, "the party opposing the class has acted or

20   refused to act on grounds that apply generally to the class, so that final injunctive

21   relief or corresponding declaratory relief is appropriate respecting the class as a

22   whole."   Fed. R. Civ. P. 23(b)(2).   "Rule 23(b)(2) applies only when a single

23   injunction or declaratory judgment would provide relief to each member of the

24   class." *Wal-Mart*, 131 S. Ct. at 2557.   Unlike Rule 23(b)(3), this prong of Rule

25   23(b) does not require that common issues of law and fact "predominate," but only

26   that class members "complain of a pattern or practice that is generally applicable to

27   the class as a whole." *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998).

28

Moreover, "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters,* 145 F.3d at 1047.

Plaintiffs and all members of the class continue to be harmed by Citi's conduct. Class-wide injunctive relief is appropriate here because Citi treated all of the class members alike by assessing interest, fees and other charges that would not have been due if their TPPs had been honored. Citi is appropriately enjoined from collecting these amounts to the extent they have not yet been paid. Similarly, borrowers making extended payments under a TPP Agreement were entitled to credit reporting consistent with their agreements as opposed to credit reporting as if they were in default.[22]   Incorrect credit reporting continues to create harm because of its lasting affect on credit score and credit standing. Corrective credit reporting is therefore appropriate by injunctive relief. Rule 23(h)(2) certification is therefore appropriate standing alone, or for the reasons stated in note 16, as part of a hybrid certification order in conjunction with Rule 23(b)(3).

## IV.   CONCLUSION

For all of the reasons stated herein, the Plaintiffs' Motion for Class certification should be granted.

Date: April 17, 2013                           **MILBERG LLP**
                                               DAVID E. AZAR
                                               NICOLE DUCKETT


                                                    */s/ David E. Azar*
                                               DAVID E. AZAR

---

[22] *See Del Campo v. Am. Corrective Counseling Serv., Inc.,* 254 F.R.D. 585, 595-596 (N.D. Cal. 2008) (certifying under (b)(2) for injunctive relief to stop abusive collection practices together with certification under (b)(3) for class members with damages).

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: dazar@milberg.com
ndfricke@milberg.com

**MILBERG LLP**
ARIANA J. TADLER
1 Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile:   (213) 868-1229
atadler@milberg.com

WESTERMAN LAW CORP.
JEFF WESTERMAN
1925 Century Park East
Suite 2100
Los Angeles, CA  90067
Telephone: (310) 698-7450
jwesterman@jswlegal.com

*Interim Lead Class Counsel*
*Counsel for Plaintiffs Beverly King and Nancy*
*Glennon*

**KLEIN KAVANAGH COSTELLO, LLP**
GARY KLEIN
SHENNAN KAVANAGH
KEVIN COSTELLO
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114
p. 617.357.5500
f. 617.357.5030
Emails: klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.coc

*Interim Lead Class Counsel*
*Counsel for Plaintiff Davidson Calfee*

**FINKELSTEIN THOMPSON LLP**
ROSEMARY M. RIVAS
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
Email: rrivas@finkelsteinthompson.com

- 26 -

1

2
**BERGER & MONTAGUE, PC**
SHERRIE R. SAVETT
3
RUSSELL D. PAUL
ERIC LECHTZIN
4
1622 Locust Street
Philadelphia, PA 19103
5
Telephone: (215) 875-3000
Facsimile: (215) 875-5715
6
ssavett@bm.net
rpaul@bm.net
7
elechtzin@bm.net

8
**CUNEO GILBERT & LADUCA LLP**
ALEXANDRA C. WARREN
9
BRENDAN S. THOMPSON
CHARLES J. LADUCA
10
MATTHEW L. WIENER
507 C Street NE
11
Washington DC 20002
Telephone: (202) 789-3960
12
Facsimile: (202) 789-1813
awarren@cuneolaw.com
13
brendant@cuneolaw.com
charles@cuneolaw.com
14
wiener_matthew@yahoo.com

15

16
**THE STURDEVANT LAW FIRM**
JAMES C. STURDEVANT
17
354 Pine Street, 4th Floor
San Francisco, CA 94104
18
Telephone: (415) 477-2410
Facsimile: (415) 477-2420
jsturdevant@sturdevantlaw .com
19

20
**HOUSING AND ECONOMIC RIGHTS ADVOCATES**
MAEVE ELISE BROWN
21
ELIZABETH S. LETCHER
1814 Franklin Street, Suite 1040
22
Oakland, CA 94612
Telephone: (510) 271-8443
23
Facsimile: (510) 868-4521
melisebrown@heraca.org
24
eletcher@heraca.org
esingerman @heraca.org
25

26
**NATIONAL CONSUMER LAW CENTER**
CHARLES M. DELBAUM
27
STUART T. ROSSMAN
7 Winthrop Square, 4th Floor
28
Boston, MA 02110
Telephone: (617) 542-8010

- 27 -

Facsimile: (617) 542-8033
cdelbaum@nclc.org
srossman @nclc.org

**STONEBARGER LAW**
GENE JOSEPH STONEBARGER
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141
gstonebarger@stonebargerlaw .com

**LEVIN, FISHBEIN, SEDRAN & BERMAN**
CHARLES E. SCHAFFER
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: 877.882.1011
Facsimile: 215.592.4663
Email: Cschaffer@Lfsblaw.CoM

**LOCKRIDGE GRINDAL & NAUEN PLLP**
ROBERT SHELQUIST
100 Washington Ave S.
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com

**HOLLAND GROVES SCHNELLER STOLZE**
ERIC D. HOLLAND
300 N. Tucker Suite 801
St. Louis, MO 63101
Telephone: 877-255-3352(O)
Facsimile: 314-241-5554
eholland@ALLFELA.com

**HUDSON MALLANEY SHINDLER ANDERSON P.C.**
J. BARTON GOPLERUD
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
jbgoplerud@hudsonlaw.net

*Members of the Plaintiffs' Executive Committee*

PLAINTIFFS' MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION