PUBLIC VERSION

1  MAYER BROWN LLP
   ELIZABETH MANN (SBN 106524)
2  *emann@mayerbrown.com*
   STEVEN E. RICH (SBN 198412)
3  *srich@mayerbrown.com*
   350 South Grand Avenue, 25th Floor
4  Los Angeles, CA 90071-1503
   Telephone: (213) 229-9500
5  Facsimile: (213) 625-0248

6  MAYER BROWN LLP
   LUCIA NALE
7  *lnale@mayerbrown.com*
   DEBRA BOGO-ERNST
8  *dernst@mayerbrown.com*
   STEPHEN J. KANE
9  *skane@mayerbrown.com*
   71 South Wacker Drive
10 Chicago, IL 60606
   Telephone: (312) 782-0600
11 Facsimile: (312) 701-7711
   (Admitted Pro Hac Vice)

12
   Attorneys for Defendant
13 CITIMORTGAGE, INC.

14          **UNITED STATES DISTRICT COURT**

15          **CENTRAL DISTRICT OF CALIFORNIA**

                **WESTERN DIVISION**
16

17 | IN RE: CITIMORTGAGE, INC. HOME | Case No. 11-mdl-2274 DSF (PLAx)
   | AFFORDABLE MODIFICATION PRO- |
18 | GRAM ("HAMP") LITIGATION | **AMENDED MEMORANDUM IN**
   | | **SUPPORT OF CITIMORTGAGE,**
19 | This document relates to: | **INC.'S MOTION FOR SUM-**
   | | **MARY JUDGMENT ON JO ANN**
20 | Beverly King, et al. v. CitiMortgage, Inc. | **GASTINEAU'S CLAIMS**
   | CV 10-3792 DSF (PLAx) |
21 | Balbir Singh v. CitiMortgage, Inc. | District Judge: Hon. Dale S. Fischer
   | CV 11-8322 DSF (PLAx) | Magistrate Judge: Paul L. Abrams
22 | Leslie Barry, et al. v. CitiMortgage, Inc. |
   | CV 11-8323 DSF (PLAx) | Date:   August 5, 2013
23 | Davidson Calfee, et al. v. CitiMortgage, | Time:   1:30 p.m.
   | Inc. | Judge:  Hon. Dale S. Fischer
24 | CV 11-8324 DSF (PLAx) |
   | Juan Silva, et al. v. CitiMortgage, Inc. | Third Amended Consolidated Class
25 | CV 11-8325 DSF (PLAx) | Action Complaint filed: June 15,
   | Jo Ann Gastineau v. CitiMortgage, Inc. | 2012
26 | CV 11-8326 DSF (PLAx) |
   | William T. Whiting v. CitiMortgage, Inc. |
27 | CV 11-8327 DSF (PLAx) |

28

---

AMENDED MEMORANDUM IN SUPPORT OF CITIMORTGAGE, INC.'S MOTION FOR SUMMARY
JUDGMENT ON JO ANN GASTINEAU'S CLAIMS; CASE NO. 11-MDL-2274 DSF (PLAX)

706739922.1

1

David G. Derosa, et al. v. CitiMortgage, Inc.
    CV 11-8328 DSF (PLAx)

2

Keith Goodyk, et. al. v. CitiMortgage Inc.,
    2:11-cv-10372 DSF(PLAx)

3

Robert Coons, et. al. v. CitiMortgage Inc.,
    2:11-cv-10373DSF(PLAx)

4

5

Joaquin Sequeira, et. al., v. CitiMortgage Inc.

6

    CV 11- 9179   DSF(PLAx)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ....................................................................................3

I.    Freddie Mac's HAMP Guidelines Required Citi To Determine Gastineau's Eligibility Based On Verified Income Documentation.....................3

II.   Gastineau Was Chronically Delinquent Before Entering Into The TPP........4

III.  Citi Sent A TPP To Gastineau, But She Failed To Return The Documentation That Citi Needed To Verify Her Income. ...................................4

ARGUMENT ......................................................................................................10

I.    The Court Should Grant Summary Judgment For Citi On Gastineau's First Breach Of Contract Claim (Count 1)....................................................11

     A.   Citi did not breach the TPP by declining to modify Gastineau's loan. ...............................................................................................11

     B.   Citi did not breach the TPP by deciding after the original Modification Effective Date. ...................................................................17

     C.   Citi did not breach any duty of good faith and fair dealing...............18

II.   The Court Should Grant Summary Judgment For Citi On Gastineau's Second Breach Of Contract Claim (Count II)................................................19

III.  The Court Should Grant Summary Judgment For Citi On Gastineau's Promissory Estoppel Claim (Count III).........................................................20

IV.  The Court Should Grant Summary Judgment For Citi On Gastineau's New Jersey Unfair Trade Practices Claim (Count V). ................................22

CONCLUSION ..................................................................................................23

-i-

MEMORANDUM IN SUPPORT OF CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON
JO ANN GASTINEAU'S CLAIMS; CASE NO. 11-MDL-2274 DSF (PLAX)

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986)........................................................................10

*Bonczek v. Carter-Wallace,*
    701 A.2d 742 (N.J. Super. Ct. App. Div. 1997)................................21

*Bourdelais v. J.P. Morgan Chase,*
    2011 WL 1306311 (E.D. Va. Apr. 1, 2011) .....................................4

*Brunswick Hills Racquet Club v. Route 18 Shopping Ctr.,*
    864 A.2d 387 (N.J. 2005).................................................................18

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).........................................................................10

*CitiMortgage, Inc. v. Crawford,*
    2013 WL 1225387 (S.D. Ohio Mar. 26, 2013)................................16

*Cnty. Chevrolet v. N. Brunswick Twp. Planning Bd.,*
    463 A.2d 960 (N.J. App. Div. 1983) ................................................14

*Conder v. Home Sav.,*
    680 F. Supp. 2d 1168 (C.D. Cal. 2010) ...........................................18

*Dutch Hill Realty v. Minetto,*
    2006 WL 3524107 (N.J. App. Div. Dec. 8, 2006)............................11

*Foley Mach. Co. v. Amland Contractors,*
    506 A.2d 1263 (N.J. App. Div. 1986) ..............................................14

*Glenfed Fin. Corp. v. Penick Corp.,*
    647 A.2d 852 (N.J. Super. Ct. App. Div. 1994).........................16, 18

*Gonzalez v. Wilshire Credit Corp.,*
    25 A.3d 1103 (N.J. 2011)..................................................................22

*Hassler v. Sovereign Bank,*
    374 F. App'x 341 (3d Cir. 2010).......................................................22

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Oracle Corp. Sec. Litig.,*
   627 F.3d 376 (9th Cir. 2010)..........................................................................10

*Knorr v. Smeal,*
   836 A.2d 794 (N.J. 2003)..............................................................................14

*Lake Waterloo Corp. v. Kestenbaum,*
   92 A.2d 478 (N.J. 1952)................................................................................16

*McIntosh v. Indymac Bank,*
   2013 WL 135315 (D. Ariz. Jan. 10, 2013).....................................................19

*Murphy v. Implicito,*
   920 A.2d 678 (N.J. Super. Ct. App. Div. 2007)..............................................20

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002).....................................................................................15

*Nolan v. Lee Ho,*
   577 A.2d 143 (N.J. 1990)..............................................................................17

*Pennington v. HSBC Bank,*
   493 F. App'x 548 (5th Cir. 2012)...................................................................16

*Retrofit Partners v. Lucas Indus.,*
   201 F.3d 155 (2d Cir. 2000)..........................................................................18

*Royal Assocs. v. Concannon,*
   490 A.2d 357 (N.J. Super. Ct. App. Div. 1985)..............................................21

*Segal v. Lynch,*
   48 A.3d 328, 342 (N.J. 2012)........................................................................21

*Seller v. CitiMortgage, Inc.,*
   No. 652001/2011, Dkt. No. 35 (N.Y. Sup. Ct. Jan. 29, 2013).....................17, 18

*Tiedemann v. Cozine,*
   688 A.2d 1056 (N.J. Super. Ct. App. Div. 1997)............................................18

*Walker v. Countrywide Home Loans,*
   98 Cal. App. 4th 1158 (2002).......................................................................20

-iii-

# TABLE OF AUTHORITIES
## (continued)

Page

*Yau v. Duetsche Bank Nat'l Trust,*
  2011 WL 5402393 (C.D. Cal. Nov. 8, 2011)....................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..........................................................................................10

-iv-

## INTRODUCTION

Plaintiff Jo Ann Gastineau alleges that CitiMortgage, Inc. ("Citi") breached her Trial Period Plan ("TPP") by not permanently reducing her monthly mortgage payment under HAMP. Because the record refutes that claim, summary judgment should be granted for Citi.

The TPP stated that Gastineau's loan "will not be modified" if Citi "determines that my representations in Section 1 are no longer true." SUF ¶ 39. Gastineau represented in Section 1 of the TPP that "I am providing … documentation for all income that I receive" to enable Citi to verify Gastineau's eligibility under HAMP. SUF ¶ 38. In the cover letter enclosing the TPP, Citi required Gastineau to submit that documentation by July 30, 2009. SUF ¶ 33.

Gastineau failed to meet that deadline. When Gastineau did submit documents, she omitted the pay stubs that Citi had specified it needed to verify her income. Gastineau subsequently submitted documents that she apparently considered to be pay stubs, but they lacked the year-to-date earnings required by Freddie Mac (the owner of Gastineau's loan) under its HAMP guidelines. On October 28, 2009, Citi sent a letter to Gastineau terminating her TPP. SUF ¶ 52.

Because Gastineau did not provide "documentation for all income that I receive" (SUF ¶ 38), Citi acted within its rights under the TPP by declining to modify Gastineau's loan. Indeed, Citi would have violated Freddie Mac's rule that servicers verify borrowers' stated income by collecting paystubs reflecting "year-to-date earnings" had Citi modified Gastineau's loan. SUF ¶ 3. Beyond this, Gastineau did not make any of her TPP payments by the deadline. The TPP therefore authorized Citi to decline a permanent modification on the alternative ground that she did "not ma[k]e the Trial Period payments" on time. SUF ¶ 39.

At Gastineau's request, Citi repeatedly reopened Gastineau's HAMP application to allow her to submit the requisite documents. For example, following its

1

initial decision, Citi extended the deadline for Gastineau to submit pay stubs re-
flecting year-to-date earnings three times. In its final extension, Citi warned Gasti-
neau that "you will be removed from the program … [i]f we do not receive your"
pay stubs by March 30, 2010. SUF ¶ 58. Because Gastineau missed that deadline,
Citi told Gastineau in April 2010 that it could not modify her loan under HAMP.

Gastineau alternatively alleges that Citi waived, or is estopped from assert-
ing, its right to deny a modification because Citi resolved Gastineau's request and
accepted TPP payments after the TPP's Modification Effective Date of October 1,
2009. There is no evidence, however, that Citi intentionally abandoned its right to
deny a permanent modification or lulled Gastineau into reasonably believing that it
had decided to modify her loan. In fact, because Gastineau failed to make her third
TPP payment by the September 30, 2009 deadline, Freddie Mac rules contemplat-
ed deferring the Modification Effective Date to November 1, 2009. Citi terminated
Gastineau's TPP on October 28, 2009, before that Modification Effective Date.

Moreover, in frequent oral and written communications before and after the
original Modification Effective Date, Citi requested information from Gastineau to
determine if she qualified under HAMP. Gastineau could not have reasonably be-
lieved that Citi had decided to modify her loan at the same time Citi was requesting
documents it needed to decide if Gastineau even qualified for a modification.

Waiver and estoppel are particularly inappropriate here for two reasons.
First, Gastineau did not make her third TPP payment by September 30, 2009, yet
argues that Citi waived its rights by not deciding the very next day. Second, Gasti-
neau did not complete her document submission until late 2010—one year after the
Modification Effective Date and months after Citi stopped accepting TPP pay-
ments. Gastineau should not be permitted to use her failure to timely make TPP
payments and provide documents to obtain a modification that violates HAMP.

In addition to her TPP-based claims, Gastineau alleges that Citi assessed

2

property inspection fees, late fees, and other delinquency-related fees while she made TPP payments. That is incorrect. Citi charged delinquency-related fees to Gastineau before she entered into the TPP and after the TPP terminated because Gastineau was chronically delinquent. Citi charged property inspection fees to Gastineau during and after the trial period because ███████████████. Regardless, Gastineau never paid the fees. Indeed, Gastineau has lived in her house for nearly three years ███████████████████.

## STATEMENT OF FACTS

**I.    Freddie Mac's HAMP Guidelines Required Citi To Determine Gastineau's Eligibility Based On Verified Income Documentation**

Freddie Mac owns Gastineau's loan. SUF ¶ 1. Thus, Freddie Mac's HAMP guidelines, which are distinct from the Treasury HAMP guidelines that govern non-GSE loans, govern this case. SUF ¶ 2.

Freddie Mac guidelines provide that a loan is eligible under HAMP only if borrowers provide "income documentation." SUF ¶ 3. A borrower's income must be "supported by documentation that is not more than 90 days old as of the date the Servicer first determines eligibility." SUF ¶ 4.

Freddie Mac also requires that servicers "calculate a Target Payment" for eligible loans under HAMP's underwriting criteria. SUF ¶ 5. In doing so, Freddie Mac directs servicers to follow a sequence of steps in an attempt to reduce the borrower's monthly payment to 31% of the borrower's monthly gross income. SUF ¶ 6. If the servicer cannot do so, the loan does not qualify under HAMP. SUF ¶ 7.

Freddie Mac's guidelines initially permitted servicers to send an unsigned TPP based on "a Borrower's verbal (stated) communication of any information necessary to qualify an eligible Borrower for a modification." SUF ¶ 8. "However, the Servicer must verify income and ensure continued eligibility ... prior to signing the [TPP] and returning it to the Borrower." *Id.*

3

"Although this TPP-first, verification-later procedure allowed servicers to expedite the TPP process and quickly provide relief to struggling homeowners, it resulted in some borrowers who were offered TPPs being found ineligible for permanent modifications." *Bourdelais v. J.P. Morgan Chase*, 2011 WL 1306311, at *1 n.2 (E.D. Va. Apr. 1, 2011). As a result, Freddie Mac eliminated "stated income Trial Period Plans" effective June 2010, requiring "full verification of Borrower eligibility" before sending TPPs. SUF ¶ 9. Because Citi implemented that directive after sending Gastineau a TPP in June 2009, it does not apply here.

**II.     Gastineau Was Chronically Delinquent Before Entering Into The TPP.**

In 2003, Gastineau (then named Joann Voorhees) took out a mortgage to buy a house in New Jersey. SUF ¶ 11. The mortgage required monthly payments of approximately $███. SUF ¶ 12. Citi became the servicer in January 2005. SUF ¶ 13.

Gastineau was delinquent on her mortgage from the outset. *See* SUF ¶ 14. From ████████████████████████, Citi sent Gastineau ████ notices of default because she failed to make required payments. SUF ¶ 15.

In May 2007, Gastineau resigned her job. SUF ¶ 16. She remained unemployed for the following two years. *Id.*

Gastineau first asked Citi for a loan modification in October 2007. SUF ¶ 17. Citi sent an application to Gastineau, but she did not respond. SUF ¶ 18. Citi sent Gastineau numerous delinquency letters over the next 15 months. SUF ¶ 19.

Gastineau again asked Citi for a loan modification in March 2009. SUF ¶ 20. Citi again sent an application to Gastineau, who again failed to respond. SUF ¶ 21.

**III.    Citi Sent A TPP To Gastineau, But She Failed To Return The Documentation That Citi Needed To Verify Her Income.**

Gastineau failed to make any mortgage payments from April through June of 2009. SUF ¶ 22. Consequently, on June 8, 2009, Citi sent a letter to Gastineau ask-

4

ing her to call if she wished to be considered for a HAMP modification. SUF ¶ 23.

Gastineau testified that on June 12, 2009, she called Citi to find out "if I would even be eligible to start the trial period." SUF ¶ 24. According to Gastineau, she told a Citi representative named Lisa about her income. SUF ¶ 25. Gastineau understood that Lisa would base her decision "on the information [Gastineau was] giving her." SUF ¶ 26. Lisa explained that Gastineau needed to submit documents verifying her oral representations. SUF ¶ 27. Gastineau testified to understanding that she "might not get a modification … if the documents that [Gastineau] sent to Citi didn't match the information [she] gave [Lisa] over the phone." *Id.*

On June 30, 2009, Citi sent Gastineau a package that included a cover letter, a TPP, a checklist of documents Citi needed, and a Hardship Affidavit. SUF ¶ 28.

***The TPP Documents***. In the opening sentence of the cover letter, Citi made clear that it had not decided whether Gastineau even qualified for a TPP: "You *may* qualify for a [HAMP] Trial Period Plan." SUF ¶ 29 (emphasis added); *see* SUF ¶ 30 ("IF we are able to modify your loan"); *id.* ("If you do not qualify"). The letter also made clear that compliance with the TPP would not guarantee a loan modification, stating that Citi could modify the loan only "[i]f you qualify under [HAMP] *and* comply with the terms of the [TPP]." SUF ¶ 31 (emphasis added).

The cover letter instructed Gastineau to submit various documents "to see if you qualify" for a modification, including two signed copies of the TPP and a completed Hardship Affidavit. SUF ¶ 32. The letter also instructed Gastineau to return "[d]ocumentation to verify all … income," including Gastineau's 2008 tax return and her two most recent pay stubs. *Id.*; *see* SUF ¶ 34. The letter stated in bold: "**You must send in both signed copies of the [TPP], all required documentation, and your first trial period payment by … 7/30/2009.**" SUF ¶ 33.

The TPP required monthly payments of $▮▮▮▮ by July 30, August 30, and September 30 of 2009. SUF ¶ 35. In the meantime, the TPP required Gastineau

5

to return "documents to permit verification of all of my income … to determine whether I qualify" for a modification. SUF ¶ 36. By signing the TPP, Gastineau "agree[d]" that "the Loan Documents remain in full force and effect." SUF ¶ 37.

Gastineau represented in Section 1 of the TPP that "I am providing … documentation for all income that I receive." SUF ¶ 38. If "the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate." SUF ¶ 39. "In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be returned to me." *Id.*

The Hardship Affidavit similarly made clear that Gastineau still needed "to qualify" for "an agreement to modify my loan under [HAMP]." SUF ¶ 40. By signing the Affidavit, Gastineau acknowledged that Citi "will use this information to evaluate my/our eligibility for a loan modification." SUF ¶ 41. Gastineau also certified in the Hardship Affidavit that "I/we am/are willing to provide all requested documents and to respond to all Service communication in a timely manner. I/we understand that time is of the essence." SUF ¶ 42.

Gastineau testified that she understood from these documents that she "needed to send in all the required income documents and [her] first trial payment by July 30, 2009." SUF ¶ 108. Gastineau knew her loan would not be permanently modified unless she "supplied every document that was required." SUF ¶ 109.

***The Initial Document Collection***. On July 31, 2009—one day after the deadline identified in the TPP cover letter—Citi received various documents from Gastineau. SUF ¶ 43. Those documents included a 2008 tax return reporting an adjusted annual gross income of $██. SUF ¶ 44. Next to the entry "Copy of the two most recent pay stubs" on the document checklist, Gastineau noted that she had "started new employment" on July 15, 2009. SUF ¶ 45. Gastineau stated that

6

her new job paid a monthly salary of $███. SUF ¶ 46.

Gastineau's submission was incomplete. Gastineau omitted the second page from one of the TPPs and failed to return any pay stubs. SUF ¶ 47. Consequently, on August 28, 2009, Citi sent a letter to Gastineau informing her that it needed additional documents and instructing Gastineau to call back. SUF ¶ 48. Gastineau called Citi, which told Gastineau to submit the missing TPP page, a letter on her employer's letterhead confirming Gastineau's hiring, and her two most recent pay stubs. SUF ¶ 49. In a fax dated September 22, 2009, Gastineau submitted the second page of her Hardship Affidavit (not the requested TPP), a letter verifying her employment, and a document of unknown origin. SUF ¶ 50.

*The HAMP Decision*. Not having received proper pay stubs, Citi called Gastineau on October 2, 2009 to tell her that she had not submitted the necessary documents. SUF ¶ 51. Receiving no response, Citi sent a letter to Gastineau on October 28, 2009. The letter stated: "Because you have not kept the terms of the Forbearance Plan with us, we have cancelled it." SUF ¶ 52.

*The First Appeal*. After receiving Citi's October 28 denial notice, Gastineau called Citi. Gastineau stated that she had already submitted the requested documents, but would do so "again." SUF ¶ 53. Receiving no response, Citi sent Gastineau an "**URGENT NOTICE**" on November 16 stating that "**WE MUST HAVE** … [c]opies of the two (2) most recent pay stubs indicating year-to-date earnings." SUF ¶ 54. The notice helped Gastineau by "extend[ing] the deadline" for her to submit pay stubs with year-to-date earnings until November 30, 2009. *Id.*

In early December 2009, Citi again helped Gastineau by giving her through the end of January 2010 to submit proper pay stubs. SUF ¶ 55. On December 7, Citi received copies of a check made out to Gastineau by her employer for $██, two documents of unknown origin that Gastineau apparently considered to be pay stubs, and a check made out to Gastineau's husband. SUF ¶ 56. However, as Gas-

7

tineau acknowledged in a handwritten note accompanying the documents, "my paystubs do not have the year to date" earnings. SUF ¶ 57.

In January 2010, Citi sent Gastineau another "**URGENT NOTICE**" stating that "**WE MUST HAVE** … [c]opies of the two (2) most recent pay stubs indicating year-to-date earnings." SUF ¶ 58. The notice again helped Gastineau by "extend[ing] the deadline" for her to submit proper pay stubs until March 30, but emphasized that "**[t]his deadline is real.**" *Id.* "If we do not receive your information you will be removed from the program. If you are removed, you will be required to pay your full mortgage payment and all past due amounts." *Id.* Citi tried to help Gastineau again in February 2010, sending a text message reminding Gastineau that required documents were missing and urging her to call Citi. SUF ¶ 59.

On April 28, 2010, Citi orally informed Gastineau that it could not modify her loan under HAMP because she had not submitted the necessary documents. SUF ¶ 60. The next month, Citi sent a letter to Gastineau confirming that her loan could not be modified under HAMP because she "did not provide us with the documents we requested." SUF ¶ 61.

*The Second Appeal*. Gastineau disputed Citi's determination. SUF ¶ 62. Citi helped Gastineau by agreeing to reopen her HAMP application (*id.*), but by that time the documents that Gastineau submitted in Fall 2009 were stale under Freddie Mac rules. SUF ¶ 4. Therefore, in June 2010, Citi instructed Gastineau to provide a current bank account statement, pay stubs, and an IRS Form 4506T. SUF ¶ 63.

In early July 2010, Citi received a Form 4506T signed by "Jo Ann Gastineau," a letter stating that Gastineau had lost her job, and a promise to submit proof that her bank account had been closed. SUF ¶ 64. On July 8, Citi told Gastineau that it either needed a new Form 4506T signed with the same name as the name on the mortgage (Jo Ann Vorhees) or a driver's license showing Gastineau's married name. SUF ¶ 65. When Citi called Gastineau on July 12 to remind her

8

about the missing documents, Gastineau promised to fax them that day. SUF ¶ 66. Citi did not receive the promised fax, so Citi advised Gastineau on July 30 that it had closed her application. SUF ¶ 67.

*The Third Appeal*. In August 2010, Citi received a note in which Gastineau stated that she had lost her job and bank statements showing that Gastineau's account had been "force closed." SUF ¶ 69. On September 10, 2010, Citi advised Gastineau that her lack of income made her ineligible for HAMP. SUF ¶ 70.

*The Fourth Appeal*. Gastineau again sought review of her HAMP application in late September 2010, submitting a handwritten letter in which she said that she had found employment. SUF ¶ 71. On October 1, Citi expressed willingness to look at Gastineau's application again, asking Gastineau to submit a letter from her employer verifying Gastineau's new job. SUF ¶ 72. Not having received the letter by October 11, Citi closed Gastineau's HAMP application. SUF ¶ 73.

*The Fifth Appeal*. Gastineau asked Citi to reopen her HAMP application again in late October 2010. SUF ¶ 74. Gastineau subsequently sent a series of faxes that included a verification letter from her employer, current pay stubs, and other documents. SUF ¶ 75. Despite having no obligation to do so, Citi helped Gastineau again by reviewing her file in mid-December 2010. SUF ¶ 76.

To reduce Gastineau's mortgage payment to 31% of her monthly gross income, Citi calculated that it would have to forbear collection of $███████ in principal. SUF ¶ 77. Under Freddie Mac rules in effect at the time, "the amount of partial principal forbearance is limited to the greater of (i) 30% of the unpaid principal balance of the Mortgage ... or (ii) an amount resulting in a modified interest-bearing balance that would create a Mark-to-Market [loan-to-value] Ratio equal to 100%." SUF ¶ 78. The forbearance amount of $██████ was far more than 30% of the unpaid balance of $██████ SUF ¶ 79. Nor would forbearing on $██████ have created a loan-to-value ratio of 100%. SUF ¶ 80. Consequently, on December

9

1  24, 2010, Citi told Gastineau that she did not qualify under HAMP. SUF ¶ 81.

2      ***TPP Payment History***. Citi did not receive any of the three payments re-

3  quired under Gastineau's TPP by the due date. It received Gastineau's first TPP

4  payment (due by July 30, 2009) on July 31; her second payment (due August 30)

5  on September 3; and her third payment (due September 30) in separate installments

6  on October 8 and 9. SUF ¶ 82.

7      Citi extended Gastineau's trial period to give her more time to submit pay

8  stubs with year-to-date earnings, making her payments due by the 30th of each

9  month through January 2010. SUF ¶ 83. Gastineau made her October and Novem-

10  ber payments late. SUF ¶ 84. Gastineau then stopped making payments until

11  ████. SUF ¶¶ 85, 86. She resumed making payments in approximately the

12  amount required by the TPP through ████. SUF ¶ 86. Gastineau has not

13  made a payment since. SUF ¶ 87.

14  <center>**ARGUMENT**</center>

15      "The court shall grant summary judgment" if "there is no genuine dispute as

16  to any material fact" and "the movant is entitled to judgment as a matter of law."

17  Fed. R. Civ. P. 56(a). To meet its "initial" burden, Citi need not "produce evi-

18  dence" disproving Gastineau's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

19  325 (1986). Rather, Citi need only "point[] out" that "there is an absence of evi-

20  dence to support [Gastineau's] case." *Id.* at 325. The burden then "shifts" to Gasti-

21  neau "to designate specific facts demonstrating the existence of genuine issues for

22  trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This bur-

23  den is not a light one." *Id.* If Gastineau's evidence "is merely colorable, or is not

24  significantly probative, summary judgment may be granted." *Anderson v. Liberty*

25  *Lobby*, 477 U.S. 242, 249-50 (1986).

26      New Jersey law governs this motion because Gastineau's property is located

27  there. Gastineau's loan documents provide that they "shall be governed by … the

<center>10</center>

28

law of the jurisdiction in which the Property is located." SUF ¶ 89. The answer would be the same under common law. *E.g.*, *Dutch Hill Realty v. Minetto*, 2006 WL 3524107, at *4 n.2 (N.J. App. Div. Dec. 8, 2006).

## I.   The Court Should Grant Summary Judgment For Citi On Gastineau's First Breach Of Contract Claim (Count 1).

### A. Citi did not breach the TPP by declining to modify Gastineau's loan.

Gastineau alleges that because she made TPP payments and submitted "documentation," Citi breached the TPP by not modifying her loan under HAMP. Compl. ¶¶ 382, 389. The submission of trial payments and documents were not, however, the sole conditions for a modification. The TPP also required Gastineau to satisfy HAMP's eligibility criteria and provide timely, accurate information to Citi. Gastineau failed to satisfy these requirements in three ways.

First, the TPP states that Citi could modify Gastineau's loan only if her "representations in Section 1 continue to be true." SUF ¶ 95. Thus, as this Court has noted, Citi "would not be obligated to provide a permanent modification" if "[t]he representations made by the borrower in order to enter into the TPP … cease[d] to be true." Dkt. No. 67 at 6. The TPP gave Citi sole discretion to make that decision, stating that "the Loan Documents will not be modified" if "***Lender*** determines that my representations in Section 1 are no longer true." SUF ¶ 39 (emphasis added).

In Section 1 of the TPP, Gastineau represented that "I am providing … documentation for all income that I receive." SUF ¶ 38. The TPP documents stated that Gastineau "**must send in … all required documentation … by … 7/30/2009**." SUF ¶ 33 (emphasis in original). And in her Hardship Affidavit, Gastineau certified her willingness "to provide all requested documents and to respond to all Servicer communication in a timely manner." SUF ¶ 42.

Gastineau did not submit any documents by July 30, 2009. When Gastineau submitted her initial documents on July 31, 2009, she did not include the pay stubs

11

that Citi specified were essential. SUF ¶¶ 43, 44, 45. Despite Citi's repeated reminders (SUF ¶¶ 48-49, 51), Gastineau did not submit proper pay stubs over the ensuing months. Gastineau's representation in Section 1 of the TPP that she would provide "documentation for all income that I receive" was therefore not "true," authorizing the written denial that Citi sent to Gastineau in October 2009. SUF ¶ 52.

At Gastineau's request, Citi repeatedly reopened Gastineau's HAMP application to allow her to submit the requisite documents. By that time, however, Citi had terminated the TPP. SUF ¶ 52. The TPP states that it "will terminate" if Citi "determines that my representations in Section 1 are no longer true." SUF ¶ 39. Citi's post-October 2009 conduct could not breach a terminated TPP.

Even if Gastineau claims that the TPP remained in effect, Citi's denials of Gastineau's multiple appeals did not breach the TPP. For example, following the October 2009 denial, Citi extended the deadline for Gastineau to submit paystubs with year-to-date earnings until November 30, 2009. SUF ¶ 54. Gastineau missed that deadline, so Citi extended the deadline again, this time through January 2010. SUF ¶ 55. When Gastineau returned documents that she considered to be paystubs in December 2009, she acknowledged that they lacked year-to-date earnings (SUF ¶ 57), as Freddie Mac requires. SUF ¶ 3. Citi helped Gastineau again by extending the deadline for her to comply until March 30, but warned that "you will be removed from the program … [i]f we do not receive your information" by that date. SUF ¶ 58. Gastineau again did not meet the deadline, authorizing Citi's April 2010 decision declining to modify Gastineau's loan. SUF ¶ 60.

Moreover, Citi appropriately denied Gastineau's HAMP modification request in December 2010. Between the time when Gastineau called Citi in June 2009 requesting a modification and the time when Gastineau finally submitted the last of the required documents in October 2010, Gastineau lost a job, was hired for a different job at a different salary, and missed payments that increased her loan

12

balance. *Supra* at 9. We explain above that as of December 2010, reducing Gastineau's monthly mortgage payment to 31% of her monthly gross income would have required Citi to forbear more principal than Freddie Mac permitted. *Supra* at 9-10. Citi thus acted within its rights by declining Gastineau's request on the ground that her June 2009 representations "cease[d] to be true" (Dkt. No. 67 at 6), and she no longer qualified under Freddie Mac's HAMP rules.

Second, Citi did not breach the TPP by declining to permanently modify Gastineau's loan under HAMP because Gastineau did not make any of her TPP payments on time. *Supra* at 10; SUF ¶ 82. During the period when Citi extended Gastineau's deadline to submit documents, Gastineau continued to make late payments and missed other payments altogether. SUF ¶¶ 83-85. Accordingly, Gastineau was not in compliance with the TPP, permitting Citi to decline a modification. SUF ¶ 38 (TPP provides that "the Loan Documents will not be modified" if "I have not made the Trial Period payments required under Section 2").

Third, the TPP made clear that Gastineau still needed to qualify under HAMP. The TPP stated that Citi needed "to determine whether I qualify" (SUF ¶ 36), cautioning that "the Loan Documents will not be modified unless … I meet all of the conditions required for modification." SUF ¶ 98. The TPP cover letter explained that Citi could modify Gastineau's loan only "[i]f you qualify under [HAMP] *and* comply with the terms of the [TPP]." SUF ¶ 31 (emphasis added).

Gastineau did not qualify under Freddie Mac's HAMP rules. To reduce her monthly payment to the level required under those rules, Citi calculated that it would have to forbear collection of far more principal than Freddie Mac allowed. SUF ¶¶ 76-80. Gastineau was thus ineligible under HAMP because she did not "meet all of [its] conditions." SUF ¶ 98.

***Citi neither waived nor is estopped from asserting its rights.*** The complaint alleges that Citi "waived" its right to deny a loan modification by not "timely" re-

13

solving plaintiffs' requests. Compl. ¶ 388. It also alleges that Citi is "estopped" from denying a modification, citing Citi's "acceptance" of TPP payments after the "deadline." *Id.* Plaintiffs apparently equate "deadline" with the Modification Effective Date identified in the TPP, *i.e.*, "the first day of the month following the month in which the last Trial Period Payment is due." SUF ¶ 99.

Waiver is "the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal*, 836 A.2d 794, 798 (N.J. 2003). It may be found only "by a clear, unequivocal and decisive act." *Cnty. Chevrolet v. N. Brunswick Twp. Planning Bd.*, 463 A.2d 960, 962 (N.J. App. Div. 1983). Equitable estoppel "requires proof of a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse." *Foley Mach. Co. v. Amland Contractors*, 506 A.2d 1263, 1266 (N.J. App. Div. 1986).

There is no evidence that Citi intentionally abandoned its right to deny a modification or induced Gastineau into reasonably believing that it had decided to modify her loan. To the contrary, the factual record refutes Gastineau's theories.

First, Gastineau's waiver theory does not even work on its own terms. Gastineau's TPP initially had a Modification Effective Date of October 1, 2009. SUF ¶¶ 82, 99. But Gastineau did not make her final TPP payment (due by September 30, 2009) until October 9, 2009—*after* the Modification Effective Date. SUF ¶ 82. Under these circumstances, Freddie Mac rules contemplate deferring the Modification Effective Date until "the first day of the second month following the final Trial Period month" (SUF ¶ 106), which in this case was November 1, 2009. Citi sent a denial notice to Gastineau before that date, on October 28, 2009. SUF ¶ 52.

Second, the parties' communications made clear that Citi had not decided to modify Gastineau's loan. The TPP package instructed Gastineau that Citi needed

14

her documents "to see if you qualify." SUF ¶ 32. Gastineau testified to understanding that she "might not get a modification" if her documented income differed from her stated income. SUF ¶ 27. At least eight times from October 2009 through August 2010 (when Citi stopped accepting TPP payments), Citi asked Gastineau for documents it needed to determine if she qualified under HAMP. *Supra* at 7-9. Gastineau could not have reasonably believed that Citi had decided to modify her loan when it was asking her for documents that it needed to make that decision.

Third, waiver and estoppel are particularly inappropriate because Gastineau did not timely submit all HAMP-required documents. Citi instructed Gastineau to return specified documents by July 30, 2009. SUF ¶ 33. Freddie Mac's HAMP rules gave Citi "discretion" to consider a TPP to have expired after 60 days if the borrower "has not submitted … all required documentation." SUF ¶ 107. Citi could have invoked that rule to deny Gastineau's request in September 2009. Instead, Citi gave Gastineau through the end of October 2009 before cancelling the TPP. Citi subsequently reopened Gastineau's application several times, repeatedly extending Gastineau's deadlines for submitting documents. Gastineau still had not returned pay stubs with year-to-date earnings until October 2010, however, and Citi did not accept any TPP payments after that time.

Gastineau nevertheless seeks to use her own failure to provide HAMP-required documents until late 2010—more than one year after the Modification Effective Date—to obtain a loan modification that violates HAMP rules. If Gastineau were right, borrowers could delay submitting documents until after the Modification Effective Date and then insist that the servicer waived its right to deny a modification by failing to decide by that Date—even though Freddie Mac bars servicers from modifying loans without verified "income documentation." SUF ¶ 3.

Fourth, waiver and estoppel are "equitable doctrines." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). But "he who seeks equity must do eq-

15

uity." *Lake Waterloo Corp. v. Kestenbaum*, 92 A.2d 478, 480 (N.J. 1952). Gastineau's delay in submitting TPP payments and documents prevents her from using equitable doctrines to impose upon Citi a loan modification that violates HAMP. Indeed, HAMP rules are imposed by the federal government, not Citi. Citi thus lacked authority to waive Freddie Mac's monthly payment and forbearance limits.

Fifth, the Fifth Circuit rejected the theory that acceptance of TPP payments after the trial period precludes servicers from denying HAMP modifications. It explained that although the servicer accepted "ten trial payments," the borrowers "owed more than that." *Pennington v. HSBC Bank*, 493 F. App'x 548, 551, 555 (5th Cir. 2012). "Even if the bank intended to refuse to accept the TPP, it would still take the money in partial satisfaction of the amount owed … ." *Id.* at 555.

Moreover, Gastineau's TPP states that acceptance of TPP payments "will not be deemed a waiver of" Citi's rights. SUF ¶ 96. Gastineau's loan documents also allowed Citi to "accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights." SUF ¶ 88. Courts have cited identical provisions in holding that "the explicit terms of [the] mortgage and the TPP Agreement make clear that acceptance of TPP payments does not constitute a waiver of [Citi's] rights." *CitiMortgage, Inc. v. Crawford*, 2013 WL 1225387, at *4 (S.D. Ohio Mar. 26, 2013). New Jersey courts enforce no-waiver provisions because "a contrary view would discourage lenders from allowing borrowers leeway and encourage those lenders to play hardball in the face of every default." *Glenfed Fin. Corp. v. Penick Corp.*, 647 A.2d 852, 859 (N.J. Super. Ct. App. Div. 1994).

Finally, Gastineau's waiver and estoppel theories depend on the notion that the TPP required Citi to resolve her request by the Modification Effective Date. That is incorrect for reasons stated below. Beyond this, a servicer's "failure to notify the borrower of its decision prior to the Modification Effective Date does not trigger an obligation of the lender to give the borrower a permanent modification."

16

*Seller v. CitiMortgage, Inc.*, No. 652001/2011, Dkt. No. 35 at 9 (N.Y. Sup. Ct. Jan. 29, 2013) (Rich Decl., Ex. 11). Indeed, Gastineau's position turns the TPP on its head. The TPP states that if Citi "does not provide me a fully executed copy of this Plan and the Modification Agreement … prior to the Modification Effective Date," "the Loan Documents will not be modified and this Plan will terminate." SUF ¶ 39.

**B.     Citi did not breach the TPP by deciding after the original Modification Effective Date.**

As this Court has noted, Count 1 alleges that Citi "breached the TPP by failing to offer a permanent modification." Dkt. No. 67 at 6; *see* Compl. ¶ 389. Plaintiffs suggest in their motion for class certification, however, that Citi breached the TPP merely by deciding after the Modification Effective Date. Dkt. No. 316. That theory could not apply to Gastineau because, as we explain above, Citi decided before the amended Modification Effective Date of November 1, 2009.

Plaintiffs' theory fails for several additional reasons. First, "[w]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). By signing the TPP, Gastineau agreed that she would "provid[e] … documentation for all income that I receive" and make her TPP payments on time. SUF ¶ 38. Gastineau did neither, breaching material terms of the TPP. Indeed, Gastineau's failure to return HAMP-required documents prevented Citi from resolving her request on the merits, excusing Citi from any obligation to decide by the original Modification Effective Date of October 1, 2009.

Second, there is no evidence that Gastineau incurred any injury between October 1 and October 28, 2009, when Citi canceled the TPP.

Third, neither the TPP nor HAMP makes the Modification Effective Date a deadline by which the servicer must decide. The TPP made the Modification Effective Date the first day on which Citi ***could*** permanently modify Gastineau's loan,

17

not the deadline for Citi to decide. SUF ¶ 98.

Plaintiffs have cited the TPP's proviso that Citi "will send me a signed copy of this Plan if I qualify … or will send me written notice that I do not qualify." SUF ¶ 110. Under Plaintiffs' view that it was unnecessary for Citi to sign the TPP, there would be no need to satisfy the "or" clause by sending written notice. In any event, "nothing in the TPP … requires Citi … to send plaintiffs a denial letter by a time certain." *Seller*, Dkt. 35 at 9. Plaintiffs' attempt to read a deadline into the TPP under its "time is of the essence" clause therefore fails. Compl. ¶ 98; *see* SUF ¶ 97. A "time is of the essence" clause "does not in itself ordinarily impose an independent time constraint," but rather is relevant only if "a time for performance is specified." *Retrofit Partners v. Lucas Indus.*, 201 F.3d 155, 160 (2d Cir. 2000); *accord Tiedemann v. Cozine*, 688 A.2d 1056, 1058 (N.J. Super. Ct. App. Div. 1997).

## C.  Citi did not breach any duty of good faith and fair dealing.

New Jersey interprets the implied covenant of good faith and fair dealing narrowly, lest it "impos[e] unintended obligations upon parties and destro[y] the mutual benefits created by legally binding agreements." *Brunswick Hills Racquet Club v. Route 18 Shopping Ctr.*, 864 A.2d 387, 399 (N.J. 2005). The covenant can neither "'alter the terms of a written agreement'" nor require Citi to "compromis[e] its contractual rights in order to aid its debtor." *Glenfed*, 647 A.2d at 857, 859.

Gastineau cannot maintain an implied covenant claim against Citi based on alleged breaches of her original loan documents because Citi does not own Gastineau's loan—Freddie Mac does. SUF ¶ 1. Because "'a loan servicer is not a party to the deed,'" judges in this District have dismissed breach of contract claims against servicers, citing the lack of "contractual privity." *Conder v. Home Sav.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (Guilford, J.); *accord Yau v. Duetsche Bank Nat'l Trust*, 2011 WL 5402393, at *4-*5 (C.D. Cal. Nov. 8, 2011) (Selna, J.). In any event, the record refutes the allegations underlying Gastineau's claim:

18

- There is no evidence that Citi "fail[ed] to perform loan servicing functions" required under Gastineau's loan documents or that any such failure injured Gastineau. Compl. ¶ 379(a).

- There is no implied covenant in Gastineau's loan documents requiring Citi to "train" or "supervise" its employees in any particular manner. *Id.* ¶ 379(b). Regardless, there is no evidence that any such failure injured Gastineau.

- There is no implied covenant requiring Citi "to permanently modify" Gastineau's loan or "provide alternatives to foreclosure." *Id.* ¶ 379(c). Nor is there any evidence that Citi used "unfair means" to keep Gastineau in a TPP that allowed her to make reduced payments and avoid foreclosure. *Id.*

- Citi did not make "inaccurate … determinations" of Gastineau's eligibility for a permanent modification. *Id.* ¶ 379(d); *id.* ¶¶ 379(e), (j).

- Refuting the allegation that Citi told plaintiffs to default "as a condition" of receiving a TPP (*id.* ¶ 379(f)), Gastineau was ████████████████ when she signed the TPP. SUF ¶¶ 15, 19, 22. Thus, Gastineau's "default was not caused by any advice they received from [Citi] … to go into default." *McIntosh v. Indymac Bank*, 2013 WL 135315, at *3 (D. Ariz. Jan. 10, 2013).

- Finally, there is no evidence that Citi made "misleading offers" or "fail[ed] to follow through" on unspecified "promises." Compl. ¶ 379(g)-(i).

## II. The Court Should Grant Summary Judgment For Citi On Gastineau's Second Breach Of Contract Claim (Count II).

Gastineau's second breach of contract claim alleges that while she made TPP payments, Citi purportedly breached her loan documents by "force placing insurance" on her mortgage and charging property inspection fees as well as "other default and delinquency fees." Compl. ¶¶ 399-401. The lack of privity bars Gastineau from maintaining a claim for breach of her loan documents. In any event, the record refutes the allegations underlying Gastineau's claim.

19

Citi's records establish that Citi did not "force place insurance" on Gastineau's mortgage while she made TPP payments or at any other time. SUF ¶ 100.

Although Citi charged Gastineau various default and delinquency fees, Citi's records show that it did not do so while Gastineau timely made the payments required by her mortgage or the TPP. SUF ¶ 103. Gastineau's loan documents authorized the default and delinquency fees that Citi charged because Gastineau was in default when the fees were imposed. SUF ¶ 90.

As for the property inspection fees, Gastineau's mortgage authorizes "fees for services performed in connection with Borrower's default, … including … property inspection … fees." SUF ¶ 91. Gastineau was in default while she made TPP payments. That is true because Gastineau was in default when she entered the TPP (SUF ¶ 101), and her TPP payments did not cure her default. The TPP made this explicit, stating that Citi's acceptance of TPP payments "shall not constitute a cure of my default." SUF ¶ 96. Even under the TPP itself, Gastineau failed to make timely payments, breaching the TPP. SUF ¶ 82. Gastineau's mortgage therefore authorized the property inspection fees. *See Walker v. Countrywide Home Loans*, 98 Cal. App. 4th 1158, 1176-77 (2002) (deed authorized property inspection fees).

Regardless, Citi's records show that Gastineau has not paid the property inspection fees that Citi charged to her. SUF ¶ 105. Nor has Gastineau paid any other delinquency-related fees imposed after the TPP process began in July 2009. *Id.* Accordingly, Gastineau has not incurred the requisite injury to maintain a breach of contract claim. *See Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (to maintain breach of contract claim, plaintiff must show that it "sustained damages as a result" of a breach).

**III.   The Court Should Grant Summary Judgment For Citi On Gastineau's Promissory Estoppel Claim (Count III).**

A promissory estoppel claim requires "(1) a clear and definite promise; (2)

20

made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Segal v. Lynch*, 48 A.3d 328, 342 (N.J. 2012). "The essential justification for the doctrine is avoidance of substantial hardship or injustice were the promise not to be enforced." *Royal Assocs. v. Concannon*, 490 A.2d 357, 361 (N.J. Super. Ct. App. Div. 1985).

The complaint alleges that Citi promised in the TPP and orally that it would modify Gastineau's loan if she "made [her] TPP payments" and "provided the requested supporting documentation." Compl. ¶ 423. There is no record evidence that Citi orally promised to modify Gastineau's loan. Even if there were, the TPP documents make any promise to modify Gastineau's loan contingent upon (among other things) Gastineau submitting the documents Citi needed to verify her eligibility under HAMP. When a purported promise is "contingent" upon the promisor's further review, the promise is insufficient to support a claim. *Bonczek v. Carter-Wallace*, 701 A.2d 742, 746 (N.J. Super. Ct. App. Div. 1997).

Beyond this, there is no evidence that Gastineau incurred "substantial detriment" acting in "reasonable reliance" on any promise to modify her loan. *Segal*, 48 A.3d at 342. Nor could Gastineau have reasonably relied on the TPP as promising to modify her loan regardless of whether she timely submitted documents (she did not), timely made her TPP payments (she did not), or satisfied HAMP requirements (she did not). To the contrary, the TPP expressly conditioned a loan modification on Citi's receipt and review of Gastineau's documents so that Citi could determine whether Gastineau qualified under Freddie Mac's HAMP rules.

Finally, this is not a case where injustice can be avoided only by enforcing a purported promise to allow Gastineau to make TPP payments for the remainder of the loan. Gastineau failed to timely provide verification of her income. When Citi had the information it needed to assess Gastineau's application, Citi found that Gastineau did not qualify under HAMP. *Supra* at 9-10. Gastineau should not be

21

permitted to use her failure to submit timely documentation to trump HAMP rules.

**IV.   The Court Should Grant Summary Judgment For Citi On Gastineau's
New Jersey Unfair Trade Practices Claim (Count V).**

To maintain a private cause of action under New Jersey's Consumer Fraud Act ("CFA"), Gastineau must demonstrate "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss.'" *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011).

The complaint alleges that Citi violated the CFA by "leading borrowers to believe that Citi would offer permanent HAMP modifications." Compl. ¶ 517. There is no evidence supporting that claim insofar as it applies to Gastineau. On the contrary, the TPP made clear that a modification was contingent upon (among other things) Citi's receipt and review of Gastineau's documents and its confirmation that she qualified under HAMP. Gastineau could not have justifiably relied on any promise to modify her loan given the TPP's requirement that Citi receive and review Gastineau's documents to verify her eligibility; and there is no evidence that Gastineau suffered harm by being temporarily allowed to make reduced payments and avoid foreclosure.

The complaint also claims that Citi violated the CFA by collecting "late fees." *Id.* ¶ 522. As discussed above, late fees were expressly authorized by Gastineau's loan documents. *See Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (rejecting CFA claim because contract "explicitly provided for" allegedly impermissible actions).[1] In any event, Citi's records show that Gastineau has not paid those fees and therefore has not suffered the requisite injury. SUF ¶ 105.

In sum, the undisputed facts establish that Citi did not engage in deceptive

---

[1] If Gastineau bases her CFA claim on unpled purported failures to disclose or servicing procedures of the sort alleged by the California plaintiffs, such a claim would be preempted by the National Bank Act for reasons stated in Citi's motion for summary judgment on the King-Glennon claims.

22

1   conduct in servicing Gastineau's loan. Citi cancelled Gastineau's TPP in October

2   2009 following her failure to return documents required by Freddie Mac. Citi nev-

3   ertheless helped Gastineau by repeatedly reopening her application to permit Gas-

4   tineau to submit the required documents. And despite Gastineau's chronic delin-

5   quency, Gastineau continues to live in her house to this day.

6                              **CONCLUSION**

7        Citi respectfully requests that the Court grant summary judgment for Citi on

8   all counts asserted by Jo Ann Gastineau.

9   Dated: June 14, 2013               MAYER BROWN LLP

10                                      By:    /s/ Elizabeth Mann

11                                      Elizabeth Mann
                                        Lucia Nale
12                                      Debra Bogo-Ernst
                                        Steven E. Rich
13                                      Stephen J. Kane
                                        Attorneys for CitiMortgage, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                      23

28