**MILBERG LLP**
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
300 South Grand, Suite 3900
Los Angeles, California 90071
Telephone:  (213) 617-1200
Facsimile:   (213) 617-1975

**KLEIN KAVANAGH COSTELLO, LLP**
GARY KLEIN
klein@kkcllp.com
SHENNAN KAVANAGH
kavanagh@kkcllp.com
KEVIN COSTELLO
costello@kkcllp.com
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114
Telephone: 617.357.5500
Facsimile: 617.357.5030

*Interim Lead Class Counsel*

[Counsel for Plaintiff Balbir Singh listed on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE: CITIMORTGAGE, INC. HOME AFFORDABLE MODIFICATION PROGRAM ("HAMP") LITIGATION | ) Case No. 11-ml-2274 DSF (PLAx) )<br>) **PLAINTIFF BALBIR SINGH'S** |
| This document relates to: | ) **OPPOSITION TO** ) **CITIMORTGAGE, INC.'S** ) **MOTION FOR SUMMARY** |
| Beverly King, et al. v. CitiMortgage, Inc., | ) **JUDGMENT** |
|    CV 10-3792 DSF (PLAx) | ) |
| Balbir Singh v. CitiMortgage, Inc., | ) Date:    September 16, 2013 |
|    CV 11-8322 DSF (PLAx) | ) Time:    1:30 p.m. ) Judge:  Hon. Dale S. Fischer |
| Leslie Barry, et al. v. CitiMortgage, Inc., | ) |
|    CV 11-8323 DSF (PLAx) | ) ***Third Amended Consolidated Class*** |
| Davidson Calfee, et al. v. CitiMortgage, Inc., | ) ***Action Complaint filed:  June 15, 2012*** |
|    CV 11-8324 DSF (PLAx) | ) |
| Juan Silva, et al. v. CitiMortgage, Inc., | ) |
|    CV 11-8325 DSF (PLAx) | ) |
| Jo Ann Gastineau v. CitiMortgage, Inc., | ) |
|    CV 11-8326 DSF (PLAx) | ) |

OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS

1   William T. Whiting v. CitiMortgage, Inc., )
          CV 11-8327 DSF (PLAx)            )
2   David G. DeRosa, et al. v. CitiMortgage )
    Inc.,                                   )
3         CV 11-8328 DSF (PLAx)            )
                                           )
4   Robert Coons, et al. v. CitiMortgage Inc., )
          CV 11-01655 DSF (PLAx)           )
5                                          )
6   Joaquin Sequeira, et al. v. CitiMortgage )
    Inc.                                    )
          CV 11- 9179 DSF(PLAx)            )
7                                          )
8   _____ )

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

      A.    Singh Sought Assistance In June 2009 ....................................3

      B.    Trial Period Plan - September to December 2009 ....................4

III.  ARGUMENT...........................................................................................6

      A.    Standard of Review ..................................................................6

      B.    Citi's Motion for Summary Judgment Should Be Denied
            as a Matter of Law with Respect to the Breach of
            Contract Claim...........................................................................7

            1. Citi and Singh Entered Into a Valid Contract ..................7

            2. Singh Performed His Contractual Obligations................8

            3. Citi Breached The Terms of the TPP Contract ...............8

            4. Singh Was Damaged By Citi's Breach Of The TPP .................12

      C.    Waiver and Estoppel Applies to Citi's Misconduct ........................13

      D.    Citi's Motion Should Be Denied as a Matter of Law with
            Respect to Singh's Breach of Contract Claim for Property
            Inspection Fees and Default/Delinquency Fees ...............................14

      E.    Citi's Motion Should be Denied as a Matter of Law with
            Respect to Singh's Promissory Estoppel Claim ...............................14

      F.    Citi's Motion Should be Denied Because City Breached
            the Implied Covenant of Good Faith and Fair Dealing as
            a Matter of Law ...............................................................................15

      G.    Citi Breach The California Credit Reporting Agencies Act as a Matter
            of Law................................................................................................17

TABLE OF CONTENTS

H.   The National Bank Act Does Not Preempt FAL and UCL.............. 18

I.   Citi Violated The California False Advertising Law as a Matter of Law ................................................................. 21

J.   Citi Violated The Unfair Competition Law as a Matter of Law ................................................................. 23

1.  Unlawful Conduct ........................................................ 23

2.  Fraudulent Conduct ..................................................... 24

3.  Unfair Conduct .......................................................... 25

IV.   CONCLUSION ................................................................. 25

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Federal Cases**

*Agustin v. PNC Fin. Serv. Grp.,*
  707 F.Supp.2d 1080 (D. Haw. 2010).................................................................. 20

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................ 6

*Arevalo v. Bank of America Corp.,*
  850 F.Supp.2d 1008 (N.D. Cal. 2011).............................................................. 19

*Bank of Am. v. City & County of S.F.,*
  309 F.3d 551 (9th Cir. 2002).............................................................................. 20

*Barnett Bank of Marion Cnty., N.A. v. Nelson,*
  517 U.S. 25 (1996) ............................................................................................ 19

*Bosque v. Wells Fargo Bank, N.A.,*
  762 F.Supp.2d 342 (D. Mass. 2011).................................................. 9, 10, 11, 16

*Cave v. Saxon Mortgage Services, Inc.,*
  2012 WL 1957588 (E.D. Pa. 2012).................................................................... 11

*Cipollone v. Liggett Group, Inc.,*
  505 U.S. 504 (1992) .......................................................................................... 18

*Corvello v. Wells Fargo Bank, N.A.,*
  2013 WL 4017279 (9th Cir. Aug. 8, 2013) ............................................ 7, 10, 11

*Gardner v. Am. Home Mort. Serv., Inc.,*
  691 F.Supp.2d 1192 (E.D. Cal. 2010)................................................................ 24

*Gaudin v. Saxon Mortgage Services, Inc.,*
  820 F.Supp.2d 1051 (N.D. Cal. Aug. 22, 2011)............................................ 7, 13

*Gaudin v. Saxon Mortgage Services, Inc.,*
  2011 WL 5825144 (N.D. Cal. Nov. 17, 2011).............................................. 13, 16

*Gorman v. Wolpoff & Abramson, LLP,*
  584 F.3d 1147 (9th Cir. 2009)...................................................................... 17, 18

*Gutierrez v. Wells Fargo Bank, NA,*
   704 F.3d 712 (9th Cir. 2012) ................................................................. 19, 20, 21

*In re CitiMortgage HAMP Litig.,*
   2012 U.S. Dist. LEXIS 67056 (C.D. Cal. 2012) ....................................... passim

*Kugle v. Island Cement, LLC,*
   2010 WL 4960009 (D. Hawaii Nov. 30, 2010) ................................................ 8

*Lucia v. Wells Fargo Bank, N.A.,*
   798 F.Supp.2d 1059 (N.D. Cal. 2011) ...................................................... 7, 19

*Martinez v. Stanford,*
   323 F.3d 1178 (9th Cir. 2003) ...................................................................... 6

*Martinez v. Wells Fargo Home Mortg., Inc.,*
   598 F.3d 549 (9th Cir. 2010) ................................................................. 19, 20

*Mosten Management Company, Inc. v. Zurich-American Insurance Group,*
   62 Fed.Appx. 175 (9th Cir. 2003) ............................................................... 16

*Munoz v. Fin. Freedom Senior Funding Corp.,*
   567 F.Supp.2d 1156 (C.D. Cal. 2008) ......................................................... 20

*O'Donnell v. Bank of Am.,*
   504 Fed. Appx. 566 (9th Cir. 2013) ............................................................ 21

*Pension Trust Fund v. Fed. Ins. Co.,*
   307 F.3d 944 (9th Cir. 2002) ...................................................................... 23

*Rice v. Santa Fe Elevator Corp.,*
   331 U.S. 218 (1947) .................................................................................... 18

*Rose v. Chase Bank USA, N.A.,*
   513 F.3d 1032 (9th Cir. 2008) .................................................................... 21

*Sutcliffe v. Wells Fargo Bank, N.A.,*
   283 F.R.D. 533 (N.D. Cal. 2012) .................................................................. 7

*Turbeville v. JPMorgan Chase Bank,*
   2011 WL 7163111 (C.D. Cal. 2011). .............................................................. 7

**TABLE OF AUTHORITIES**

*U.S. v. Locke,*
   529 U.S. 89 (2000) ................................................................. 19

*U.S. v. Lummi Indian Tribe,*
   235 F.3d 443, 452 (9th Cir. 2000) ........................................... 8

*Watters v. Wachovia Bank, N.A.,*
   550 U.S. 1 (2007) ................................................................. 19

*Webb v. Carter's Inc.,*
   272 F.R.D. 489 (C.D. Cal. 2011)........................................... 24

*White v. Trans Union, LLC,*
   462 F.Supp.2d 1079 (C.D. Cal. 2006)..................................... 18

*Young v. Wells Fargo Bank, N.A.,*
   717 F.3d 224 (1st Cir. 2013) ....................................... 1, 10, 11

**State Cases**

*Arce v. Kaiser Foundation Health Plan, Inc.,*
   181 Cal.App.4th 471 (2010)................................................... 25

*Careau & co. v. Security Pacific Business Credit, Inc.,*
   222 Cal.App.3d 1371 (1990)................................................... 15

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,*
   2 Cal.4th 342 (1992).............................................................. 15

*Chern v. Bank of Am.,*
   15 Cal.3d 866 (1976).............................................................. 22

*Day v. AT&T Corp.,*
   63 Cal.App.4th 325 (1998)............................................... 22, 24

*Durell v. Sharp Healthcare,*
   183 Cal.App.4th 1350 (2010)............................................ 15, 16

*Feather River Trailer Sales, Inc. v. Sillas,*
   96 Cal.App.3d 234 (1976)....................................................... 22

*/ / /*

- v -

**TABLE OF AUTHORITIES**

*Fisher v. Wells Fargo Bank,*

    2009 WL 2772887 (Cal. App. Sept. 2, 2009)........................................................ 17

*Harm v. Frasher,*

    181 Cal.App.2d 405 (1960) ...................................................................................... 15

*Hussey-Head v. World Sav. and Loan Ass'n,*

    111 Cal.App.4th 773 (2003) ..................................................................................... 17

*In re Tobacco II Cases,*

    46 Cal.4th 298 (2009)................................................................................... 22, 23, 24

*Jenkins v. JP Morgan Chase Bank, N.A.,*

    216 Cal.App.4th 497 (2013) ..................................................................................... 24

*Jolley v. Chase Home Finance, LLC,*

    213 Cal.App.4th 872 (2013) ..................................................................................... 14

*Kasky v. Nike, Inc.,*

    27 Cal.4th 939 (2002) ............................................................................................... 22

*Klein v. Chevron U.S.A., Inc.,*

    202 Cal.App.4th 1342 (2012) ................................................................................... 25

*Kwikset Corp. v. Superior Court,*

    51 Cal.4th 310 (2011)................................................................................................ 22

*Loranger Const. Corp. v. E.F. Hauserman, Co.,*

    1 Mass.App.Ct. 801 (1973) ...................................................................................... 10

*McKell v. Wash. Mut., Inc.,*

    142 Cal.App.4th 1457 (2006).................................................................................... 24

*Oasis West Realty, LLC v. Goldman,*

    51 Cal.4th 811 (2011)................................................................................................. 7

*Racine & Laramie, Ltd. v. California Department of Parks and Recreation,*

    11 Cal.App.4th 1026 (1992) ..................................................................................... 15

*Saunders v. Superior Court,*

    27 Cal.App.4th 832 (1994) ....................................................................................... 23

**TABLE OF AUTHORITIES**

*Schoendorf v. U.D. Registry, Inc.*,
   97 Cal.App.4th 227 (2001) ............................................................ 18

*Smith v. Well Fargo Bank, N.A.*,
   135 Cal. App.4th 1463 (2005) ................................................. 19, 25

**State Statutes**

Cal. Bus. & Prof. Code §17200 ...................................... 20, 22, 23

Cal. Bus. & Prof. Code § 17500 ..................................... 20, 22, 24

Cal. Civil Code §1785.25(a) ................................................... 17

Cal. Civil Code §1785.31................................................... 17

**Federal Rules**

Fed. R. Civ. P. 56(c) ............................................................ 6

**TABLE OF AUTHORITIES**

## I.   INTRODUCTION

CitiMortgage, Inc.'s ("Citi") motion for summary judgment as to Plaintiff Balbir Singh ("Singh") should be denied. Citi's interpretation of the operative document in this case - the Home Affordable Modification Trial Period Plan ("TPP") - is deeply flawed and conflicts with the prior rulings of this Court.

Citi's summary judgment motion ("Motion") – like its opposition to class certification – distorts Singh's case and incorrectly distills his claim as contending that Citi breached the TPP based solely on its failure to permanently modify his loan under HAMP.  As a result of this gross misinterpretation of Singh's claims, Citi's Motion largely fails to address the true nature of Singh's claims: that Citi breached the TPP by failing to provide written denial of a HAMP modification at the deadline set forth in the TPP – *i.e.*, the Modification Effective Date ("MED"). Citi's only acknowledgement of Singh's legal theory is its repeated exhortations that the TPP creates no temporal requirements on its performance. Citi misconstrues the TPP and ignores *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224 (1st Cir. 2013), which unequivocally supports the conclusion that the performance promised by Citi had to be rendered at the MED.  Thus, Citi's interpretation of the MED must be rejected, and with it, the rest of its Motion.

The record shows Citi breached its TPP contract with Singh as a matter of law. Citi cannot escape the fact that the TPP is a binding contract. Nor can Citi ignore the temporal requirements placed on its performance in the form of a finite Trial Period set forth in the TPP, ending at the MED.  By failing to issue either a permanent HAMP modification or a written notice of denial at the MED, Citi breached the TPP.

The record demonstrates that Singh fully performed his obligations under the TPP by making trial payments, in full and on time, and submitting all necessary documents requested during the Trial Period.  However, Citi failed to render its promised performance to Singh at the MED (*i.e.*, either offering a HAMP

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1 modification or sending a written notification of denial).

2      Citi's arguments concerning Singh's claims for breach of the implied
3 covenant of good faith and fair dealing and promissory estoppel fare no better. In
4 attacking these claims, Citi relies on the same flawed breach of contract arguments
5 set forth above; thus, these arguments similarly fail as a matter of law.

6      Citi's Motion, as it relates to Singh's claims for violations of the California
7 False Advertising Law and Unfair Competition Law, similarly fails as (1) these are
8 state laws of general applicability, and thus, are not preempted by the National
9 Bank Act; and (2) Citi's statements that it would render a timely decision at the
10 MED is indisputably false and misleading given that Citi's loan modification
11 process made it impossible to render a timely decision.

12      Ultimately, each of Citi's arguments are based on its self-serving view of the
13 appropriate resolution of core questions of law in this MDL that are common to the
14 class.  These issues are described and addressed in the Plaintiffs' Motion for Class
15 Certification.[1]  As stated in those papers, the following legal issues are common to
16 the class and should be resolved *on the merits for the class* rather than in individual
17 motions for summary judgment: 1) whether there is a temporal requirement for
18 Citi's performance in the TPP; 2) whether Citi's acceptance of payments after the
19 Trial Period effect an implied waiver of conditions precedent; and 3) whether a
20 borrower is damaged by deferring the decision on whether to grant a permanent
21 modification until long after the Trial Period.   Singh requests that the Court resist
22 Citi's invitation to use the summary judgment motions as an appropriate vehicle to
23 resolve these common legal issues.

24 **II.   STATEMENT OF FACTS**

25      Around 2002, Singh bought a house in California. Singh's Statement of
26 Genuine Disputes ("Singh's SGD"), No. 1.  In 2007, Singh refinanced the loan on

27
---
[1] Because of the overlap of certain issues in this Opposition and Plaintiffs' Motion Class
28 Certification, Singh will cite to the briefing and evidence submitted in support thereof
where appropriate to avoid expanding on an already voluminous record.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

1    his house, entering into a deed of trust with Citi.  *Id.* at No. 2.  The adjustable rate

2    promissory note required Singh to make initial monthly payments of about $1,841

3    in interest, and provided for interest-only payments until 2014.  *Id.* at No. 3.

4          **A.**    **Singh Sought Assistance In June 2009**

5          As a result of Singh's divorce and the loss of his wife's income, he

6    experienced serious financial struggles in the Spring of 2009. Singh's Statement of

7    Additional Material Facts ("Singh's SAMF"), No. 87. These difficult

8    circumstances prompted Singh to contact Citi for hardship assistance and loan

9    modification to avoid defaulting on his mortgage loan in June 2009. *Id.*

10         On June 24, 2009, Singh spoke with one of Citi's representatives. *Id.* at No.

11   88. During this telephone call, Citi's representative expressly told Singh he was

12   pre-approved for a TPP and that he was required to submit various documents to

13   Citi, including documents showing financial hardship and documents related to,

14   among other things, insurance, escrow, utility bills, and taxes. *Id.* During his

15   conversation with Citi's representative, Singh asked Citi to schedule automatic

16   TPP payments of $1,550 for June 2009, July 2009, and August 2009. *Id.* at No. 89.

17   Singh timely made these TPP payments. *Id.* at Nos. 90, 92, 95.

18         On July 28, 2009, Singh contacted Citi to inquire why he had not received

19   the TPP documents and spoke with one of Citi's representatives. *Id.* at No. 91.

20   Citi's representative informed Singh that (1) he had been approved for a TPP; (2)

21   the documents are not sent until after the first TPP payment has been made; (3)

22   although Singh had made the first payment, the payment had not been processed;

23   and (4) the documents could take 3 to 3.5 weeks to be sent. *Id.*

24         On August 12, 2009, Singh again contacted Citi as he had not received the

25   TPP documents. During this call, Citi's representative informed Singh the TPP

26   documents had not been sent but would be in the upcoming weeks. *Id.* at No. 93.

27   / / /

28   / / /

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

### B.   Trial Period Plan - September to December 2009

In August 2009, Citi determined Singh met the threshold requirements for HAMP and sent him the TPP documents. *Id.* at No. 94. On August 20, 2009, Singh executed the TPP and returned it to Citi with all required documents. *Id.* Under the TPP, Singh's TPP payments of $1,550 were due September 1, 2009, October 1, 2009, and November 1, 2009. *Id.* at No. 96. After Singh executed the TPP, he made each TPP payment before its due date. *Id.* at No. 95, 102, 103.

Singh's TPP provided he would receive a permanent loan modification if he qualified and complied with the terms of the TPP. Specifically, the TPP provided:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. *Id.* at No. 97.

Singh's TPP was not an open-ended agreement - it specified beginning and ending dates for the parties' performance. The TPP provided that it began September 1, 2009 and ended December 1, 2009. *Id.* at No. 98 ("HAM trial... ending 12/01/09"). Underscoring this point, the TPP provided "TIME IS OF THE ESSENCE." *Id.* at No. 99. The TPP further stated that Citi was obligated to provide "a signed copy of this Plan if I qualify for the Offer or will send me *written* notice that I do not qualify for the Offer." *Id.* at 100. Thus, Citi agreed that if Singh sent in all requested documents and timely made all TPP payments, Citi would permanently modify his loan or send a written notice of denial at the MED of December 1, 2009.

In September and October 2009, Citi informed Singh that it required additional information and documents to process his HAMP loan modification, including a Hardship Affidavit, utility bill, tax information, a divorce decree, and bank statements. *Id.* at No. 101. Singh promptly sent in the requested documents, and by November 2, 2009, Citi received the required documents. *Id.*

-4-

1    Beginning November 2009, Citi representatives provided Singh with

2 contradictory information by telephone.  *Id.* at No. 104.  While some of Citi's

3 representatives informed Singh that his HAMP loan modification request had been

4 denied, others advised Singh his file was still under review and instructed him to

5 continue making TPP payments.  *Id.*  Throughout 2010, at Citi's request, Singh

6 continued to send Citi documents, including income documents and pay stubs, and

7 consistently made TPP payments of $1,550.  *Id.* at No. 106.

8    On March 9, 2011, *fifteen* months after the MED, Citi informed Singh by

9 letter that it would not approve a mortgage modification under HAMP.  *Id.* at No.

10 114.  This was the ***first*** written correspondence received by Singh from Citi

11 regarding the approval or denial of his loan modification.  *Id.*  Citi admits it did not

12 offer Singh a permanent HAMP loan modification, nor did it send him a written

13 notification of denial, at the MED set forth in his TPP.  *Id.* at No. 115. The March

14 9, 2011 letter stated that the basis for Citi's denial of Singh's request for permanent

15 loan modification was not, as Citi now claims, his inability to qualify based on his

16 income; but rather, that Singh failed to make timely trial payment periods pursuant

17 to the terms of the TPP.  *Id.* at No. 116.  However, this contention is expressly

18 rebutted by the payment data in Citi's records, which unequivocally establish that

19 Singh made timely trial payment periods of $1,550 throughout the TPP period,

20 plus an additional six (6) monthly payments after the MED. *Id.* at Nos. 95, 96, 102,

21 103, 105, 108, 109, 110, 111, 112.

22    Citi's behavior left Singh in limbo, resulting in damages cognizable under

23 the law of contracts, including interest accrual and the imposition of default-related

24 charges inconsistent with the promises of the TPP.  *Id.* at No. 119. Moreover, Citi's

25 conduct harmed Singh because it prevented him from pursuing other avenues of

26 resolution, including exploring the options of short selling the property, renting out

27 one of the bedrooms in his home, or renting out his property with his realtor.  *Id.* at

28 No. 117.  The delayed denial prejudiced Singh's ability to access time-sensitive

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

1  rights under HAMP's sister programs that are triggered by a HAMP denial, and

2  negatively impacted his eligibility for them once triggered.[2]

3      While Singh struggled to continue paying Citi large sums, believing Citi

4  would process his loan modification request in a timely manner without adverse

5  credit consequences, he now finds himself at risk of foreclosure with depleted cash

6  reserves and few options for alternative living arrangements. *Id*. at 118.

7      Citi's delay, incompetence, and obstruction in the modification process have

8  left Singh worse off than he was before seeking a modification from Citi.  Singh

9  has suffered injury caused by Citi's actions, including but not limited to monetary

10 damages from increased accrued interest from the discrepancy between the TPP

11 payment and regular payment and inappropriate fees and charges associated with

12 delinquency and default.  *Id*. at 119.

13 **III.   ARGUMENT**

14     **A.   Standard of Review**

15     Summary judgment is appropriate only when "the pleadings, depositions,

16 answers to interrogatories, and admissions on file, together with the affidavits, if

17 any, show that there is no genuine issue as to any material fact and that the party is

18 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). In *Anderson v.*

19 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), the Supreme Court explained that

20 material facts are those which may affect the outcome of the case, and a dispute is

21 genuine where there is sufficient evidence for a reasonable jury to return a verdict

22 for the nonmoving party. Where a moving party's papers are insufficient to support

23 summary judgment, or reveal a genuine issue of material fact, summary judgment

24 is inappropriate. *Martinez v. Stanford*, 323 F.3d 1178, 1182–83 (9th Cir. 2003).[3]

25

26 [2] *See* Ex. 3 to Declaration of David Azar in Support of Motion for Class Certification

27 [Dkt. 317-1] (Supplemental Directive 09-01 at 15, 18 (requiring immediate review for other federal Home Affordable Foreclosure Alternative benefits if HAMP permanent

28 modification is denied)).

[3] Citi does not dispute that California law applies. *See* Def. Mem. at 8.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

**B.    Citi's Motion for Summary Judgment Should Be Denied as a Matter of Law with Respect to the Breach of Contract Claim**

Citi's Motion misrepresents Singh's breach of contract claim as limited to *only* Citi's "breach[] [of] the TPP by not modifying his loan under HAMP." Def. Mem. at 8. However, Singh actually alleges Citi breached his TPP by failing to offer him a HAMP modification *or* provide a written notice of denial at the MED set forth in his TPP. *See* Motion for Class Certification [Dkt. 316] at 3-4.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). Singh has established each of these elements.

### 1.    Citi and Singh Entered Into A Valid Contract

Singh indisputably satisfies the first element of the claim - the existence of a valid contract. Citi does not dispute, and this Court has already held, that the TPP constitutes a valid contract between the parties, regardless of whether it is signed by Citi, and that it is not merely an application for a loan modification. *See In re Citimortgage, Inc. HAMP Litig.*, 2012 U.S. Dist. LEXIS 67056, at *7-12 (C.D. Cal. 2012). Many federal courts have concluded that a trial loan modification under HAMP constitutes a valid, enforceable contract under California law. *See, e.g.*, *Corvello v. Wells Fargo Bank, N.A.*, 2013 WL 4017279, at *5 (9th Cir. Aug. 8, 2013); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 550 (N.D. Cal. 2012); *Gaudin v. Saxon Mortgage Services, Inc.*, 820 F.Supp.2d 1051, 1053-54 (N.D. Cal. Aug. 22, 2011); *Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111, at *4-5 (C.D. Cal. 2011).

Citi indisputably determined Singh satisfied the threshold requirements for a HAMP loan modification and offered him a TPP. Singh's SAMF at No. 94. Singh executed the TPP on August 20, 2009 and returned it to Citi. *Id.* Citi does not

OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS

1 │ argue lack of offer and acceptance, consideration, definite and certain terms, or the

2 │ absence of any other necessary element to create an enforceable contract.

3 │ Moreover, this Court was clear as to the promise contemplated by the TPP: "The

4 │ TPP strongly suggests to the borrower that if the borrower complies with the terms

5 │ of the TPP, the borrower will receive a permanent modification. In fact, that's what

6 │ the very first sentence of the TPP says…." *In re Citimortgage*, 2012 U.S. Dist.

7 │ LEXIS at *10. Under the law of the case doctrine, this issue should not be

8 │ reconsidered.[4]

9 │ **2.     *Singh Performed His Contractual Obligations***

10 │ Citi also does not dispute that Singh performed his contractual obligations

11 │ under the TPP, which required him to make modified monthly payments, provide

12 │ documentation for all income he received, make legal representations about his

13 │ personal circumstances, and agree to undergo credit counseling if required to do so

14 │ by Citi. Singh's SAMF at No. 97.

15 │ Here, Singh diligently and timely made TPP payments of $1,550 in August

16 │ 2009, September 2009, and October 2009. *Id.* at Nos. 95, 96, 102, 103. He

17 │ provided all requested and required documents to Citi, including, among others, a

18 │ Hardship Affidavit, utility bill, insurance documents, tax documents, account

19 │ statement, divorce decree, and bank statements. *Id.* at Nos. 94, 101, 106. As such,

20 │ Singh has adequately performed his contractual obligations and has established the

21 │ second element of this claim.

22 │ **3.     *Citi Breached The Terms Of The TPP Contract***

23 │ Citi breached the terms of the TPP when it failed to provide Singh with

24 │ *written* notice of its denial of Singh's HAMP loan modification at the MED. *Id.* at

25 │

26 │ [4]  Under the law of the case doctrine, a court is "generally precluded from reconsidering
an issue previously decided by the same court[.]" *U.S. v. Lummi Indian Tribe*, 235 F.3d

27 │ 443, 452 (9th Cir. 2000). The law of the case doctrine is properly applied to a judicial

28 │ determination that an agreement constitutes a valid contract. *See Kugle v. Island Cement,
LCC*, 2010 WL 4960009, at *12 (D. Hawaii Nov. 30, 2010).

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

Nos. 114, 115.  Citi expends great effort to justify the merits of its denial of Singh's request for permanent loan modification, but this straw-man argument ignores Citi's contractual obligation, under the terms of TPP, to render a decision on Singh's qualification for permanent modification and issue Singh a written determination of its decision *at the MED*.  In other words, Citi's argument is of no moment as it entirely skirts the true basis for Singh's claim: that Citi breached its contractual obligations under the TPP by failing to provide Singh written notice of Citi's determination of Singh's eligibility for permanent modification at the MED.

The TPP unambiguously obligates Citi to provide **written** notice of its decision to Singh regarding his loan modification. Section 2.F(iii) of the TPP provides that "[i]f, **prior to the Modification Effective Date**…the Lender determines that my representations in Section 1 are no longer true and correct," then "the loan documents will not be modified." Singh's SGD at No. 23 (Emphasis added). The second paragraph of the TPP provides, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of the Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer." *Id.* at No. 66.

Citi argues that "nothing in the TPP made the Modification Effective Date a deadline by which Citi was required to resolve Singh's request." Def. Mem. at 10:14-15. Citi's argument lacks legal support.

In *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 352 (D. Mass. 2011), the plaintiff's position was strikingly similar to that advanced by Singh:

> "…the TPP is a contract governing the three-month trial period, and that compliance with its obligations entitles plaintiffs to either (1) a new contract with a permanent loan modification or (2) a decision on whether plaintiffs are entitled to the permanent modification by the modification effective date stated in the TPP." *Id.*

The Court agreed with the plaintiff and held that the TPP: "does establish clear terms with respect to the modified payments during the three-month trial period. At a minimum, then, the TPP contains all essential and material terms necessary to

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1    govern the trial period repayments and the parties' related obligations." *Id.*

2    In sum, the *Bosque* Court was presented with a TPP containing identical

3    language as Singh's TPP, considered the precise argument advanced by Citi here,

4    and found that a failure to provide a written decision before the modification

5    effective date constituted a breach of the TPP.  There is no basis to depart from the

6    *Bosque* Court's decision in this matter.[5]

7    Subsequently, in *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 235 (1st

8    Cir. 2013), the First Circuit Court of Appeals confirmed the *Bosque* Court's

9    interpretation of the TPP, holding that the modification effective date was the

10   defendants' deadline to satisfy its obligation under TPP.  In *Young*, the defendants

11   argued the TPP allowed them to offer permanent modification at "some undefined

12   point after the modification effective date." *Id.*  The *Young* Court rejected this

13   argument because "defendants' interpretation would permit them to exercise an

14   unfettered right to withhold a permanent modification offer for an uncertain period

15   of time after the modification effective date has passed, thereby erasing the

16   benefits to the plaintiff of her compliance with the TPP." *Id.*

17   As both *Bosque* and *Young* expressly held, the TPP obligates Citi to offer

18   permanent loan modification or to issue written notice of the denial to Singh at the

19   MED - which was December 1, 2009.  By failing to do either at the MED, Citi

20   breached the TPP.  *See* Singh's SAMF at Nos. 114, 115.

21   If the holdings on *Bosque* and *Young* were not enough, on August 8, 2013,

22   the Ninth Circuit handed down *Corvello*.  In *Corvello*, after reviewing a set of facts

23   at the motion to dismiss stage that are materially similar to those before this Court,

24   the Ninth Circuit held that the plaintiffs had stated a valid cause of action for

25   breach of contract pursuant to the terms of a TPP "when the record before it

26   _____

27   [5] Under Massachusetts law, in order to assert a claim for breach of contract, plaintiffs must allege that there was a valid contract, that the defendant breached its duties under its

28   contractual agreement, and that the breach caused the plaintiff damage. *Loranger Const. Corp. v. E.F. Hauserman, Co.*, 1 Mass.App.Ct. 801, 801 (1973).

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1  showed that the bank had accepted and retained the payments demanded by the

2  TPP, but neither offered a permanent modification, nor notified plaintiffs they were

3  not entitled to one, *as required by the terms of the TPP*." *Corvello*, 2013 WL

4  4017279, at *1 (emphasis added).

5      As a matter of law, *Corvello* precludes the granting of Citi's Motion as, here,

6  Singh has shown that he made all payments demanded by the TPP, but was not

7  given a permanent modification or a written notification of denial in accordance

8  with the plain terms of the TPP.  Singh's SAMF at Nos. 96-116.

9      Acknowledging that it cannot genuinely distinguish the holdings of *Bosque*,

10 *Young*, and *Corvello*, Citi contends that even if it had an obligation to notify Singh

11 of the denial in writing at the MED, it satisfied this obligation by informing Singh

12 of such denial by telephone in November 2009.  Singh's SGD at No. 40.  This

13 argument fails because Citi informed Singh of the purported denial **by telephone**.

14 This phone call does not constitute adequate performance under the TPP

15 Agreement because, among other things, it was not accompanied by a written

16 notice of denial at the MED as obligated by the TPP.  The TPP clearly and

17 unambiguously states, "the Lender will send [Singh] a signed copy of the Plan if I

18 qualify for the Offer or will send [Singh] *written* notice that [he] do[es] not qualify

19 for the Offer." Singh's SAMF at No. 100.

20     In *Cave v. Saxon Mortgage Services, Inc.*, 2012 WL 1957588, at *7 (E.D.

21 Pa. 2012), the Court rejected the same argument advanced by Citi and held that

22 providing a denial by telephone does not fulfill the obligations set forth in the TPP:

23 > The Complaint only alleges that Plaintiffs were informed over the telephone that they did not qualify for permanent modification; there
24 > are no allegations about any written denial from Saxon.  Accordingly, we conclude that the Complaint adequately alleges, in the alternative,
25 > that Saxon breached the TPP by not sending a written denial if Plaintiffs did not qualify for permanent modification. *Id.*

26 *Cave* makes clear that Citi's failure to provide **written** notice of the denial of

27 Singh's request for loan modification at the MED is a breach of the TPP.

28 / / /

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1    Even if the Court was to find that *oral* notice of denial satisfies Citi's

2   obligations under the TPP, despite contractual language to the contrary, Citi's

3   argument still fails. Although Citi claims to have verbally informed Singh that his

4   request for loan modification was denied at the end of November 2009, Citi also

5   told Singh that his file was still under review on January 4, 2010, and that his

6   request for loan modification would be approved if he continued to make TPP

7   payments. Singh's SGD at Nos. 40, 42, 45; Singh's SAMF at No. 104. Thus, this

8   contradictory information did not make clear that Singh's request has been denied.

9        Citi's argument that it denied Singh a permanent loan modification because

10   his income was too high upon review of his documents does nothing to save its

11   argument. *See* Def. Mem. at 9. Assuming Singh's income was the basis for Citi's

12   denial, Citi cannot offer any argument that it was not in possession of the necessary

13   information to reach such a conclusion at the MED because Citi's own records

14   unequivocally prove that as early as August of 2009, it was in possession of the

15   information necessary to reach this determination and issue Singh a timely written

16   denial. Singh's SAMF at Nos. 94, 101.

17        **4.    *Singh Was Damaged By Citi's Breach Of The TPP***

18        Citi's failure to timely render a permanent modification or any timely

19   decision at all caused real harm to Singh.  Whether the Court ultimately determines

20   that the appropriate measure of damages is grounded in failure to provide a

21   permanent modification or damages solely based on late denial, Citi's breach led to

22   a spiraling series of interest charges[6] and fees on his account[7] that are inconsistent

23   _____

24   [6] The contractual rules that Citi cites as permitting it to credit TPP payments as partial
     payments apply only during the contractually defined "Trial Period" which ends, by

25   definition, at the MED.  Singh's SAMF at Nos. 122 and 123.  To accept Citi's argument
     that borrowers are not harmed by its continued acceptance of trial-level payments after

26   the Trial Period (which it then, following denial, used to justify further claims for interest
     and fees) is to accept Citi's legal argument that the MED was not a deadline fixed by its

27   definition in the contract. Stated another way, once the MED passed, the most reasonable
     interpretation of the TPP is that further partial payments are to be treated as full

28   contractual payments under the original loan note.

-12-

1  with the promises of the TPP for reasons discussed in Plaintiffs' Motion for Class

2  Certification. *See* Motion for Class Certification [Dkt. 316-1] at pp. 7-9. A timely

3  decision, even if a denial, would have resolved the question of the interest owed

4  because Singh would have known he had to recommence his full monthly

5  payments under the loan note to avoid an additional accrual of interest. A timely

6  decision would also have allowed Singh to avoid default-related fees that Citi

7  apparently applied to his account because he made partial payments in the TPP

8  amount for many additional months during the limbo period. Singh's SAMF at

9  Nos. 105, 108, 109, 110, 111, 112.

10     Knowing the status of his loan modification would also have triggered

11  Singh's right to appeal a denial or seek other mandatory foreclosure alternatives

12  under the Making Home Affordable program.[8]  Absent proper performance, Singh,

13  who received an untimely denial, was left in worse financial circumstances and

14  with fewer options than would otherwise have been the case. *See Gaudin*, 2011

15  WL 5825144, at *4 (N.D. Cal. Nov. 17, 2011) ("by promising to comply with the

16  terms of the TPP, [the plaintiff] exposed herself to greater liability for interest and

17  late charges should permanent modification not be consummated.").[9]

18     **C.   Waiver and Estoppel Applies to Citi's Misconduct**

19     As set forth more fully above, Citi was contractually obligated to send Singh

20  written denial at the MED - December 1, 2009. Citi did not provide any such

21  written notice to Singh on or prior to December 1, 2009. As such, Citi's argument

22  that it did not waive its right because it was not under any deadline to act is

23  meritless. Further, this Court already raised the possibility that acceptance of

24

---

25  [7] *See* Ex. 3 to Declaration of David Azar in Support of Motion for Class Certification
   [Dkt. 317-1] (Supplemental Directive 09-01 at 22 ("All late charges, penalties, stop-

26  payment fees, or similar fees must be waived upon successful completion of the trial

27  period.")).
   [8] *See, supra,* footnote 2.

28  [9] Singh's damages are consistent with those of the Class. *See* Plaintiffs' Motion for Class
   Certification [Dkt. 316-1] at 7-9.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

1 performance can effectuate a waiver in another context.  *See In re*

2 *Citimortgage*, 2012 U.S. Dist. LEXIS at *8 ("[E]ven if the requirement for a

3 signature could be considered an unambiguous condition precedent to Defendant's

4 obligations under the TPP, application of Restatement (2d) Contracts § 246(1)

5 could excuse the failure of the condition precedent.").

6 **D.   Citi's Motion Should be Denied as a Matter of Law with Respect
   to Singh's Breach of Contract Claim for Property Inspection Fees
7   and Default/Delinquency Fees**

8 Citi asserts it did not breach Singh's TPP by charging Singh various

9 delinquency-related fees and property inspection fees because it did not charge

10 these fees "while he was current on his loan or making payments under the TPP."

11 Def. Mem. at 14. Citi contends it was allowed to do so while Singh was delinquent.

12 *Id.* The record shows that Citi charged Singh default and delinquency fees during

13 his protracted HAMP trial period, including after the MED. Singh's SAMF at No.

14 119. Citi should have waived all late fees, penalties, and similar charges because

15 Singh timely made all his TPP payments despite Citi's failure to timely perform.

16 **E.   Citi's Motion Should be Denied as a Matter of Law with Respect
   to Singh's Promissory Estoppel Claim**
17

18 "The elements of promissory estoppel are: '(1) a promise clear and

19 unambiguous in its terms; (2) reliance by the party to whom the promise is made;

20 (3) [the] reliance must be both reasonable and foreseeable; and (4) the party

21 asserting the estoppel must be injured by the party's reliance.'" *Jolley v. Chase*

22 *Home Finance, LLC*, 213 Cal.App.4th 872, 897 (2013) (citations omitted).  Singh

23 satisfies all these elements.

24 Again, Citi mischaracterizes Singh's claim. Singh alleges that (1) Citi

25 promised, under the TPP, to provide Singh with a permanent loan modification ***or***

26 a ***written*** notice of denial at the MED (Singh's SAMF at No. 100); (2) Singh relied

27 on this promise, timely made his TPP payments, and halted his efforts to explore

28 other options regarding his property, such as short sale or rental (*Id.* at Nos. 95, 96,

-14-

102, 103, 117, 118, 119); (3) Singh's reliance was foreseeable as the TPP's
promise was clear and unambiguous (*In re Citimortgage*, 2012 U.S. Dist. LEXIS at
*16); and (4) due to Citi's failure to provide written notice of denial, Singh
continued to make his TPP payments and halted his efforts to explore other
avenues of resolution, including short selling the property, renting out one of the
bedrooms in his home, and renting out his property with his realtor. *Id.* at Nos.
117, 118, 119. Singh lost out on other options to his detriment, including
immediate short sale, which would have allowed him to preserve cash on hand and
seek cheaper living arrangements. *Id.* Singh has suffered injury caused by Citi's
actions, including but not limited to monetary damages from increased accrued
interest from the discrepancy between the TPP payment and regular payment and
inappropriate fees and charges. Singh's SAMF at No. 119.

### F.   Citi's Motion Should be Denied Because Citi Breached the Implied Covenant of Good Faith and Fair Dealing as a Matter of Law

"The covenant of good faith and fair dealing [is] implied by law in every
contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1369 (2010).
"[T]he covenant is implied as a *supplement* to the express contractual covenants, to
prevent a contracting party from engaging in conduct which (while not technically
transgressing the express covenants) frustrates the other party's rights to the
benefits of the contract." *Racine & Laramie, Ltd. v. California Department of
Parks and Recreation*, 11 Cal.App.4th 1026, 1031-32 (1992). The covenant also
requires each party to do everything the contract presupposes the party will do to
accomplish the agreement's purposes. *Harm v. Frasher*, 181 Cal.App.2d 405, 417
(1960). A breach of the implied covenant of good faith is a breach of the contract
(*Careau & co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371,
1391 (1990)), and "breach of a specific provision of the contract is not...
necessary" to a claim for breach of the implied covenant of good faith and fair
dealing (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

1 | 2 Cal. 4th 342, 373 & n. 12 (1992)).

2 |     This Court and many others have upheld claims for breach of the implied

3 | covenant with respect to TPP contracts, where servicers have engaged in precisely

4 | the same conduct as Citi. *See In re: Citimortgage*, 2012 U.S. Dist. LEXIS at *18

5 | ("To the extent that Singh's contract claims survive the motion to dismiss, so do

6 | the implied covenant of good faith and fair dealing claims."); *Gaudin*, 2011 WL

7 | 5825144, at *5 ("While the breach of the covenant of good faith and fair dealing

8 | claim may be subsumed in or duplicative of a breach of contract claim, in light of

9 | the conclusion that the TPP may provide a basis to proceed in contract, [the

10 | servicer's] substantive arguments against it fail.").

11 |     *Bosque*, once again, is particularly instructive as to the defect in Citi's

12 | argument.  Just as did the plaintiff in *Bosque*, Singh here has shown "a series of

13 | defendant's actions and omissions that undermined its ability to perform under the

14 | TPP and meet plaintiffs' performance expectations." *Bosque*, 762 F.Supp.2d at

15 | 353. The record demonstrates that Citi breached the implied covenant by:

16 |   • maintaining a policy of waiting until near the end of the trial plan

17 | before *commencing* the necessary underwriting process that compared verified information to the initially provided information. This policy made Citi's failure to issue timely decisions on permanent

18 | modification inevitable. *See* Declaration of David Azar in Support of Motion for Class Certification, Exh. '5' at 247:10-248:13, 251:09-

19 | 251:25 and Exh. '16' at 225140 [Dkt. 317];

20 |   • failing to timely notify Singh that he did not qualify for a permanent HAMP modification. Singh's SAMF at No. 114; and

21 |

22 |   • failing to hire and train sufficient staff to render timely performance of Citi's obligations under the TPP, as it was aware that its vendor was unable to handle the volume of incoming borrower documents.

23 | *See* Declaration of David Azar in Support of Motion for Class Certification, Exh. '7' at 70:15-51:15 and Exh. '19' at 00415321-25

24 | [Dkt. 317].

25 | "[T]he essence of the breach of the implied covenant... is conduct by [one party]

26 | which prevents the [other party] from obtaining its contract benefits..." *Mosten*

27 | *Management Company, Inc. v. Zurich-American Insurance Group*, 62 Fed.Appx.

28 | 175, 177 (9th Cir. 2003).  By failing to make a good faith effort to render a timely

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1 | decision regarding Singh's request for permanent loan modification, Citi prevented

2 | Singh from receiving the benefits of the contract. As such, Citi has breached the

3 | implied covenant of good faith and fair dealing of the TPP.

4 |      Above all, Citi's unjustified failure to timely offer a permanent loan

5 | modification or written notice of denial made it impossible for Singh to know what

6 | was required of him after the MED, specifically whether his continued compliance

7 | would eventually net him the benefit of his bargain (a permanent modification,

8 | albeit late), or would merely result in deeper financial distress. Singh, therefore,

9 | sufficiently proves a breach of the implied covenant of good faith and fair dealing.

10
11
### G. Citi Breached The California Credit Reporting Agencies Act as a Matter of Law

12 |      California Civil Code section 1785.25(a) "imposes legal duties - 'rule[s] of

13 | law that must be obeyed' - on furnishers of information." *Gorman v. Wolpoff &*

14 | *Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009). "The California Consumer Credit

15 | Reporting Agencies Act prohibits a person from 'furnish[ing] information on a

16 | specific transaction or experience to any consumer credit reporting agency if the

17 | person knows or should know the information is incomplete or inaccurate."

18 | *Hussey-Head v. World Sav. and Loan Ass'n*, 111 Cal.App.4th 773, 779-80 (2003)

19 | (*citing* California Civil Code section 1785.25(a)). "Violations of th[is] statute[]

20 | support a civil action for damages and other relief." *Id*. at 780 (*citing* California

21 | Civil Code section 1785.31 *et seq*.). Singh's CCRAA claim is based on Citi's

22 | practice of falsely reporting loans as delinquent, even though he made timely,

23 | agreed-upon modified trial period payments. *See Fisher v. Wells Fargo Bank*,

24 | 2009 WL 2772887, at *2 (Cal. App. Sept. 2, 2009) (CCRAA violated where bank

25 | submitted delinquent report during forbearance).

26 |      Citi contends it accurately reported Singh as delinquent because the TPP

27 | payments made "were less than the payments required by Singh's loan

28 | documents..." Def. Mem. at 18. Citi's argument fails for multiple reasons.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

First, this Court has already found that Singh's CCRAA claim is viable. *See In re Citimortgage*, 2012 U.S. Dist. LEXIS at *18-19.

Second, Citi furnished incomplete information. "[A] report violates the [CCRAA] when it is misleading or incomplete, even if it is technically accurate." *Schoendorf v. U.D. Registry, Inc.*, 97 Cal.App.4th 227, 239 (2001); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (report can be "incomplete or inaccurate" "because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decision."). Although Singh timely made all TPP payments, as contractually required by Singh and accepted by Citi, Citi reported Singh as delinquent on his mortgage payment to credit agencies, rather than as making timely payments under TPP. Singh's SGD at No. 84. While Singh's TPP payments were less than his original mortgage payment, Citi's reports of delinquency are misleading and incomplete because Citi had agreed to accept modified payments.  As Singh contracted with Citi to make TPP payments and timely made those payments, he was current and not delinquent.  Citi's attempt to justify its inaccurate credit reporting ignores its agreement and undermines the purpose of CCRAA, which mandates credit reporting procedures to be "reasonable to ensure maximum possible accuracy." *White v. Trans Union, LLC*, 462 F.Supp.2d 1079, 1081-82 (C.D. Cal. 2006).

## H.    The National Bank Act Does Not Preempt FAL and UCL

In determining whether a federal statute or regulation preempts a state law, courts begin with the general presumption that under the supremacy clause of the United States Constitution a federal statute or regulation does not preempt a state's historic police powers unless preemption is a clear and manifest purpose of the United States Congress. U.S. Const., art. VI, cl. 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The presumption against preemption is "not triggered when the State regulates in an area where there has been a history of significant federal

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

presence." *U.S. v. Locke,* 529 U.S. 89, 108 (2000). "[B]ecause preemption of state laws by federal law or regulation generally is not favored, the party claiming federal preemption has the burden to show specific state law claims are preempted. *Smith v. Wells Fargo Bank, N.A.*, 135 Cal.App.4th 1463, 1475 (2005) (*citing U.S. v. Locke, supra,* 529 U.S. at 108).

"The [National Bank] Act (and OCC regulations thereunder) does not 'preempt the field' of banking." *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010). "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the [Act]." *Id.* (*quoting Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007)). "[S]tate laws of general application continue to apply to national banks when doing so does not prevent or significantly interfere with the national bank's exercise of its powers." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722 (9th Cir. 2012) (*citing Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996)). The Ninth Circuit made clear:

> State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers. Such laws are not designed to regulate real estate lending, nor do they have a disproportionate or other substantial effect on lending. In fact, the OCC has specifically cited the UCL in an advisory letter cautioning banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices. *See* OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 WL 521380, at *2, *7 n. 2 (Mar. 22, 2002).

*Martinez*, 598 F.3d at 555-56.

Following this precedent, numerous Ninth Circuit district courts have held that the NBA does not preempt state consumer protection laws. *See, e.g., Arevalo v. Bank of America Corp.*, 850 F.Supp.2d 1008, 1025 (N.D. Cal. 2011) (holding that state consumer protection laws are not expressly preempted); *Lucia v. Wells Fargo Bank, N.A.*, 798 F.Supp.2d 1059 (N.D. Cal. 2011) (holding that plaintiffs' "particular claims... - premised upon state contract law, unfair competition and Rosenthal Act - are state laws of general application" and thus are not preempted.);

-19-

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

*Agustin v. PNC Fin. Serv. Grp.*, 707 F.Supp.2d 1080, 1094 (D. Haw. 2010) ("[T]he NBA does not expressly preempt generally applicable laws regarding unfair business practices ...."); *Munoz v. Fin. Freedom Senior Funding Corp.*, 567 F.Supp.2d 1156, 1162 n. 4 (C.D. Cal. 2008) ("The NBA ... is structured in such a way as to only implicate conflict preemption."). In 2012, the Ninth Circuit revisited *Martinez*, and confirmed:

> [T]he Unfair Competition Law itself does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public. As a non-discriminating state law of general applicability that does not "conflict with federal law, frustrate the purposes of the National Bank Act, or impair the efficiency of national banks to discharge their duties," the Unfair Competition Law's prohibition on misleading statements under the fraudulent prong of the statute is not preempted by the National Bank Act. *Bank of Am.*, 309 F.3d at 561.
>
> Wells Fargo's position—that § 7.4007(b)(2) dictates preemption—is conclusively undercut by the OCC itself, which, far from concluding that the Unfair Competition Law is expressly preempted under its regulations, "has specifically cited [California's Unfair Competition Law] in an advisory letter cautioning banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices." *Martinez*, 598 F.3d at 555. The advisory letter warns that the "consequences of engaging in practices that may be unfair or deceptive under federal or state law can include litigation, enforcement actions, monetary judgments, and harm to the institution's reputation." OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 WL 521380, at *1 (Mar. 22, 2002). The OCC recognizes that state laws that withstand preemption "typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the legal infrastructure that makes practicable the conduct of that business." Bank Activities and Operations, 69 Fed.Reg.1904, 1913 (Jan. 13, 2004). By prohibiting fraudulent business practices, the Unfair Competition Law does exactly that—it establishes a legal infrastructure.

*Gutierrez*, 704 F.3d at 726-27.  The Ninth Circuit further concluded, "California's prohibition of misleading statements does not significantly interfere with the bank's ability to" engage in the business of banking. *Id*. at 727. "Nor does the Unfair Competition Law mandate the content of any nonmisleading and nonfraudulent statements in the banking arena." *Id*.

The California False Advertising Act and Unfair Competition Law are state laws of general application that prohibits representations that are false, misleading, and/or likely to deceive the public. *See* Cal. Bus. & Prof. Code § 17200, § 17500.

The cases cited by Citi are inapposite because those plaintiffs sought to impose disclosure requirements under UCL or FAL, instead of regulate affirmative false or misleading representations. *See O'Donnell v. Bank of Am.*, 504 Fed. Appx. 566, 568 (9th Cir. 2013) (The fraud and unfair competition claims were preempted because they "would force Bank of America to *make additional disclosures*...*"); Gutierrez*, 704 F.3d at 726 ("the Unfair Competition Law itself does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public."); *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (the National Bank Act preempts affirmative disclosure requirements of a California statute, insofar as those requirements apply to national banks).

Singh alleges Citi violated the FAL and UCL by making affirmative statements which were false, misleading, and/or likely to deceive the public, including that Citi would provide Singh with permanent loan modification or timely written notice of denial at the MED. As set forth more fully above, Citi's policy and practice of processing requests for HAMP loan modifications made it impossible for Citi to provide homeowners with timely decisions. *See, supra,* §III(F). As such, its statements made to TPP participants were false and misleading. Further, because Citi "does not articulate how abiding by the Unfair Competition Law's [and False Advertising Law's] prohibition of misleading statements would prevent or significantly interfere with its ability to engage in the business of banking," the National Bank Act does not preempt Singh's state law claims. *Gutierrez*, 704 F.3d at 727.

## I.    Citi Violated The California False Advertising Law as a Matter of Law

A defendant violates the California False Advertising Law ("FAL") if it intends to perform services, and publicly disseminates advertising concerning the services which (a) contains a statement that is untrue or misleading and (b) which defendant knew, or in the exercise of reasonable care should have known, was

-21-

untrue or misleading. *See* Cal. Bus. & Prof. Code § 17500; *see also Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002).  "Advertisements" within the meaning of Section 17500 include virtually any statement made in connection with the sale of a service - widespread public dissemination is not required. *See Chern v. Bank of Am.*, 15 Cal.3d 866, 870, 876 (1976) (bank's misquotation of interest rate to single customer over the phone is misleading advertising); *Feather River Trailer Sales, Inc. v. Sillas*, 96 Cal. App. 3d 234, 248 (1976) ("[T]he terms advertising and 'advertisement' have been held to be broad enough to include oral representations made on a one-to-one basis.").

"To state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009) (internal quotations omitted). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer... is actionable under these sections [Bus. & Prof. Code, §§ 17200 and 17500]." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998). Plaintiff's injury-in-fact must "come 'as a result of'... a violation of the false advertising law." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011).

Citi represented to Singh that it would grant a permanent loan modification or issue a timely written notice of denial if Singh (a) made the reduced TPP payments during the trial period, and (2) provided additional documentation at Citi's request. Singh's SAMF at No. 97. Citi's false and misleading statements induced Singh to timely make all TPP payments and provide all requested documents from Citi. However, as set forth more fully above, Citi never intended to provide a permanent modification or a written notice of denial at the MED. Singh suffered injury as a result of Citi's conduct. Singh reasonably relied on Citi's promise that the trial modification would lead to a permanent modification or a timely denial. *Id.* at No. 120. Singh timely provided documentation of all of his

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

income (*Id*. at Nos. 94, 101, 106), and made at least three (3) trial payments (*Id*. at Nos. 95, 96, 102, 103). Singh did so to his detriment, incurring additional debt and inflated fees. *Id*. at Nos. 118, 119. As such, there are genuine issues of material fact regarding Singh's false advertising claim, and summary judgment is improper.

Citi contends that it had no duty to be forthcoming about its modification process.  Def. Mem. at 19-20. Citi's exclusive reliance on cases that address the arm's-length loan origination process, not loan modification, is misplaced.  For example, *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002), merely notes a general rule that the "lender borrower relationship in normally an arms-length transactions involving no special duty to disclose."  The rule that no duty is owed is not absolute, and Citi's role as the administrator of a government-created loan modification program exceeds the conventional role of a mere lender of money and creates a disputed issue of fact reserved for trial, not as a matter of law.

### J.   Citi Violated The Unfair Competition Law as a Matter of Law

"The UCL defines unfair competition as 'any unlawful, unfair or fraudulent business act or practice...'" *In re Tobacco II*, 46 Cal.4th at 311. "[U]nder the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.'" *Id*. "To state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Id*. at 312.

#### 1.   *Unlawful Conduct*

"The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 829 (1994). "The UCL's unlawful prong 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

1  actionable." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 520

2  (2013). "The California Supreme Court has held that UCL's 'coverage is

3  sweeping, embracing anything that can properly be called a business practice and

4  that at the same time is forbidden by law.'" *Id.*

5        Citi asserts that the unlawful prong cannot survive because Singh's

6  underlying claims for breach of contract, breach of implied covenant, promissory

7  estoppel, FAL, and CCRAA claims fail. Def. Mem. at 22. If a plaintiff's

8  underlying claims of the defendant's unlawful conduct are upheld, claims under

9  the UCL's unlawful prong must also be upheld. *Gardner v. Am. Home Mort. Serv.,*

10  *Inc.*, 691 F. Supp. 2d 1192, 1201 (E.D. Cal. 2010) (upholding UCL claim where

11  plaintiff adequately pled RESPA violation); *McKell v. Wash. Mut., Inc.*, 142 Cal.

12  App. 4th 1457, 1488 (2006). As set forth herein, Singh has established claims for

13  (a) breach of contract; (b) breach of implied covenant; (c) promissory estoppel; (d)

14  false advertising under Business and Professions Code section 17500; and (e)

15  violations of the CCRAA. Accordingly, Singh's claim under the UCL "unlawful"

16  prong also survives, and Citi cannot claim otherwise.

17            **2.**    ***Fraudulent Conduct***

18        "The fraudulent business practice prong of the UCL has been understood to

19  be distinct from common law fraud." *Tobacco II*, 46 Cal.4th at 312. "'A [common

20  law] fraudulent deception must be actually false, known to be false by the

21  perpetrator and reasonably relied upon by a victim who incurs damages. ***None of***

22  ***these elements are required to state a claim for injunctive relief' under the***

23  ***UCL.***" *Id.* (*quoting Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332 (1998))

24  (emphasis added). "To make out a claim under the 'fraudulent' prong of the UCL,

25  Plaintiffs need only prove that 'members of the public are likely to be deceived."

26  *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011). "A perfectly true

27  statement couched in such a manner that it is likely to mislead or deceive the

28  consumer... is actionable." *Day*, 63 Cal.App.4th at 332-33.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**

Citi makes no argument that the alleged misrepresentations were not false, misleading, or likely to deceive the public.  In fact, as stated above, they were indisputably likely to deceive the public because they unambiguously informed homeowners, including Singh, that Citi would provide home loan modification or timely denial if homeowners timely made all TPP payments and provided all requested documentations. Citi did not provide such a timely decision pursuant to the TPP. As such, these statements were false and misleading.

### 3. *Unfair Conduct*

"In consumer cases arising under the UCL, a business practice is 'unfair' if: (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Klein v. Chevron U.S.A., Inc.*, 202 Cal.App.4th 1342, 1376 (2012) (citation omitted).[10]

Here, as set forth more fully above, Singh's injury is substantial. Citi's practice of systematically breaching its contracts with borrowers has no benefit to consumers or competition, and is a recognized unfair business practice. *Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal.App.4th 471, 489-90 (2010); *Smith v. Well Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005) ("[A] systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.").

Lastly, Singh could not have reasonably avoided the injury as he performed his contractual obligations pursuant to the TPP, reasonably relying upon Citi's promise to provide a permanent loan modification or a written denial at the MED.

### IV. CONCLUSION

Based on the foregoing, Singh requests Citi's Motion be denied.

---

[10] While *Klein* acknowledges a split of authority with respect to the proper definition of the term "unfair", it found *Camacho* to be the better reasoned definition. *Klein*, 202 Cal.App.4th at 1376, n. 14.

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT ON BALBIR SINGH'S CLAIMS**

Date:  August 9, 2013

**STONEBARGER LAW**
GENE J. STONEBARGER
RICHARD D. LAMBERT

/s/ Gene J. Stonebarger
GENE J. STONEBARGER

75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile:  (916) 235-7141
gstonebarger@stonebargerlaw.com
rlambert@stonebargerlaw.com

*Attorneys for Plaintiff Balbir Singh*

**MILBERG LLP**
DAVID E. AZAR
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
Email: jwesterman@milberg.com
dazar@milberg.com

**KLEIN KAVANAGH COSTELLO, LLP**
GARY KLEIN
SHENNAN KAVANAGH
KEVIN COSTELLO
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114
p. 617.357.5500
f. 617.357.5030
Emails: klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com

*Interim Lead Class Counsel*

**OPPOSITION TO CITIMORTGAGE, INC.'S MOTION FOR SUMMARY JUDGMENT
ON BALBIR SINGH'S CLAIMS**