UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| Case No. | ML 11–2274 DSF (PLAx) | Date | 10/7/13 |
|---|---|---|---|
| Title | In re Citimortgage, Inc. Home Affordable Modification Program ("HAMP") Litigation | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order DENYING Plaintiffs' Motions for Class Certification (Docket No. 316, 319), DENYING Plaintiffs' Motions to Strike Testimony (Docket Nos. 382, 384), and DENYING Defendant's Motion to Strike the Class Certification Report of Ian Ayres (Docket No. 343)

## I. INTRODUCTION

Plaintiffs move to certify eight statewide[1] classes of individuals: (1) whose home mortgages were serviced by CitiMortgage, Inc. (Citi); (2) who, since April 13, 2009, entered into a Home Affordable Modification Program (HAMP) Trial Payment Plan (TPP) Agreement; and (3) who made all payments required by their TPP agreements (HAMP TPP Classes).[2] (Third Am. Consolidated Class Action Compl. (TACCAC) ¶ 364.) The classes do not include borrowers to whom Citi timely tendered either (1) a Home Affordable Modification Agreement (Modification Agreement) that complied with HAMP rules or (2) a "timely written denial of eligibility consistent with the terms of the

---

[1] Those are California, Florida, Illinois, Iowa, Maryland, Massachusetts, New Jersey, and Pennsylvania.

[2] Plaintiffs do not seek to certify a subclass of borrowers whose permanent modification agreements were repudiated. (Pls.' Mem. of P. & A. in Supp. of Class Certification & Appointment of Class Counsel (Pls.' Mem.) 1 n.1.) Plaintiffs also do not seek certification for breach of loan contracts other than TPP agreements. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

TPP." (Id. ¶ 364(a)–(b).) Plaintiffs seek certification of the classes under Federal Rule of Civil Procedure 23(a) and (b)(1), (2), and (3).

## II. LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." Wang v. Chinese Daily News, Inc., — F.3d —, Nos. 08–55483, 08–56740, 2013 WL 4712728, at *2 (9th Cir. Sept. 3, 2013). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The proponent bears the burden of demonstrating that class certification is appropriate. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

The Supreme Court has "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Id. at 1432 (citations and internal quotation marks omitted). This "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. (citations and internal quotation marks omitted).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194–95 (2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

### III. DISCUSSION

#### A. Motions to Strike

Plaintiffs move to strike the testimony of Citi experts Angela E. Watson and Faten Sabry. Citi moves to strike the testimony of Plaintiffs' expert Ian Ayres.

"Under Daubert [v. Merrell Dow Pharms, Inc., 509 U.S. 579, 597 (1993)], the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). "Kumho made clear that Daubert's principles apply to 'technical and other specialized knowledge' as well." Jinro America Inc. v. Secure Invests., Inc., 266 F.3d 993, 1004 (9th Cir. 2001). "Daubert does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." Id. "[A]n expert's 'inference or assertion must be derived by the scientific method' to be admissible."[3] Id. (citing Daubert, 509 U.S. at 590). "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." Id. (citing Kumho Tire, 526 U.S. at 152). As the Ninth Circuit has explained: "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." Jinro, 266 F.3d at 1004 (quoting Daubert, 509 U.S. at 588 (citation and internal quotation marks omitted)).

The Court's discretion to decide what expert testimony to admit "'is discretion to choose among *reasonable* means of excluding expertise that is fausse and science that is junky.'" Id. at 1005 (quoting Kumho, 526 U.S. at 159 (Scalia, J., concurring)).

#### 1. Ayres

Citi's motion centers on imperfections in the Treasury Data and concludes that Ayres's analysis is necessarily fatally flawed because it relies on data that cannot routinely identify all relevant characteristics of each HAMP applicant. But no data set is perfect. The question under Daubert is not whether an expert's report relies on and

---

[3] In Ellis, the Ninth Circuit considered the admissibility of expert social science evidence and analysis. 657 F.3d at 982–83. In describing the standard to be used in evaluating the admissibility of such evidence, Ellis referred to the "scientific method" and "scientific reliability and relevance." Id. at 982.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

analyzes perfect data — if that were the inquiry, there would be no data-based expert testimony in federal court — but rather whether an expert's report is sufficiently reliable to warrant consideration.

As Plaintiffs point out, Ayers's report acknowledges the limitations of the Treasury Data and uses Citi's internal data as a check. (Decl. of David Azar in Supp. of Mot. to Certify Class Ex. 4, Class Certification Report of Ian Ayres (Ayres Report) ¶¶ 76–77.) Ayres uses several data sources, not only the Treasury Data, and does so in a manner that iteratively refines and increases the accuracy of his analysis of the Treasury Data. (See, e.g., id. ¶¶ 75, 80.) He systematically examines available and relevant data in the form of the Treasury Database, adjusted as necessary by reference to other relevant and available databases, and comes to certain conclusions regarding identification of potential class members. His methodology is sufficiently reliable under Daubert to warrant consideration at the class certification stage.

Citi further criticizes the Ayres Report as failing to account for numerous discrepancies in several data fields, including his alleged failure to account for extensions of the trial period. However, as Plaintiffs point out, Ayres's reply report clarifies that his use of Citi's internal databases permits him to adjust his analysis at a classwide level for shortcomings in the Treasury Data. (Decl. of Jordanna G. Thigpen in Supp. of Pls.' Mot. to Strike Testimony of Dr. Faten Sabry, Ex. 1, Reply Report of Ian Ayres (Ayres Reply) ¶ 37.) When considering that "Rule 702 is applied consistent[ly] with 'the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony," Jinro, 266 F.3d at 1004, the Court concludes Ayres's identification strategy meets the Rule 702 admissibility standard and his report and its class identification strategy are sufficiently reliable to warrant consideration.

As to damages, Ayres's strategy is, in essence, to determine the difference between the hypothetical situation in which permanent modification occurred and the reality of a modification denial. (See Ayres Reply ¶ 39.) Ayres uses both Treasury Data and Citi internal data in computing these figures and indicates that his analysis is flexible. (Id. ¶ 40.) Plaintiffs have demonstrated that Ayres's testimony may well be relevant to this litigation and that Ayres applied a reliable and consistent methodology in developing a damage formula. As Ayres's testimony is sufficiently reliable, shortcomings in his testimony go to the weight and credibility of his argument. Citi's motion to strike is denied.

    2.    **Watson**

Citi has established that Watson has experience in relevant portions of the mortgage industry, (Decl. of Steven E. Rich in Opp'n to Mot. to Certify Class (Rich Decl.), Ex. 6, Expert Report of Angela E. Watson ¶¶ 1–4), and that she is providing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

opinions within her established expertise. She is at least minimally qualified and her expert report provides background and insight into relevant issues, such as how the relevant HAMP programs have changed, (id. ¶¶ 41–55), and how HAMP operates, (e.g., id. ¶ 56–57). The testimony is not more prejudicial than probative. Plaintiffs' motion to strike is denied.

      3.    **Sabry**

That Sabry has not worked in the mortgage industry, with HAMP, or with consumer finance is not, standing alone, a reason for exclusion under Federal Rule of Evidence 702 and Daubert. The question is whether her testimony and methods are sufficiently reliable and relevant to render them useful to the inquiry at hand. They are. Sabry is, in essence, a rebuttal expert to Ayres. For this purpose, Sabry's testimony, as supported by her qualifications and examination of Ayres's report, is sufficiently reliable to establish its admissibility. As with Ayres's testimony and his use of imperfect, but relevant and useful data, Sabry's failure to deal with the entire universe of documents is not a reason for exclusion. Sabry's testimony is not more prejudicial than probative. As Sabry's expert report is sufficiently reliable and relevant to permit the Court to conclude that it is admissible, other shortcomings in the data and documents she considered go to the weight and credibility of her testimony. Plaintiffs' motion to strike is denied.

    **B.**    **Class Certification**

      1.    **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted). Courts look for "shared legal issues or a common core of facts." Id. It is unnecessary for both to be present. Id. Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation. Id. at 1123. The class claims "must depend on a common contention," which "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S. Ct. 2541, 2551 (2011) (citation omitted)). The standard for finding commonality is "permissive[]" and "less rigorous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

than the companion requirements of Rule 23(b)(3)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs bear the burden of establishing that they have met the commonality requirement. See Comcast, 133 S. Ct. at 1432.

As discussed at the September 16, 2013 hearing, Plaintiffs assert that the common question of law is whether Citi breached the TPP by failing to provide a permanent modification or a written denial by the Modification Effective Date (MED). (Hearing Tr. 10:10–15, 11:3–22, Sept. 16, 2013.) When stated in this simplistic manner, this is a common question of law that is capable of classwide resolution. Resolution of this question potentially would "resolve an issue that is central to the validity of each one of the claims in one stroke." This is so, as Plaintiffs contend, even if the answer is "no," and the litigation therefore ends – at least in class form. For the reasons discussed at the hearing[4] and after considering the arguments in the parties' briefs, the Court concludes that Plaintiffs have met their burden under Rule 23(a)(2). The Court does not address the other Rule 23(a) factors as it finds that certification is not warranted under Rule 23(b)(1), (2), or (3).

### 2. Rule 23(b)(1)

In a footnote in their moving papers, Plaintiffs make a conclusory argument that certification under Rule 23(b)(1) is appropriate and cite three district court cases without providing any substantive explanation as to why the reasoning in those cases would support certification on the facts and law in this case. (Pls.' Mot. 16 n.15.) In their reply papers, Plaintiffs, again in a footnote, state only that they "do not concede that Rule 23(b)(1) certification is inappropriate" and state that Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180 (9th Cir. 2001) does not apply here. (Pls.' Reply 14 n.18.) Plaintiffs' reply fails to provide any substantive analysis supporting certification on the facts and law in this case. Plaintiffs bear the burden of demonstrating that Rule 23(b)(1) certification is proper. Comcast, 133 S. Ct. at 1432. Plaintiffs' discussion of the issue is so cursory that does not come close to satisfying that burden.

### 3. Rule 23(b)(2)

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

---

[4] Citi's counsel eventually conceded that this is a common question, but argued that it does not predominate. (Hearing Tr. 16:7-16.)

**MEMORANDUM**

the class as a whole . . . .'" Ellis, 657 F.3d at 986. "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Id. (citation and internal quotation marks omitted).

After Wal-Mart, it is clear that putative classes seeking individual monetary claims must seek Rule 23(b)(3) certification. Wang, 2013 WL 4712728, at *4 (citing Wal-Mart, 131 S. Ct. at 2559–60.) Plaintiffs seek individual monetary damages and therefore must certify their proposed class, at least in part, under Rule 23(b)(3). However, Plaintiffs argue that their proposed class may be certified under Rule 23(b)(2) with respect to (1) enjoining Citi from assessing interest, fees, and other charges "that would not have been due if their TPPs had been honored," and (2) corrective credit reporting "consistent with their agreements as opposed to credit reporting as if they were in default." (Pls.' Mot. 25; see also Pls.' Reply 20.)

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Wal-Mart, 131 S. Ct. at 2557 (citation and quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Id. "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Id.

As discussed below, determination of whether Citi was required to or did issue a written denial by the MED is not enough to determine what injunctive relief a class member deserves. As evidenced by the motions for summary judgment, (see, e.g., Docket Nos. 355, 356), Citi may have properly assessed certain interest, fees, and other charges, for example, as a result of late payments made before the trial period began or after the trial period ended. An individualized inquiry would be necessary to determine: (1) which interest, fees, and other charges Citi improperly assessed, (2) which interest, fees, and charges Citi should be enjoined from applying to class members' accounts moving forward, and (3) which charges or payments were improperly reported to credit bureaus. Plaintiffs have not demonstrated that certification under Rule 23(b)(2) is appropriate standing alone or in conjunction with Rule 23(b)(3) certification.

### 4. Rule 23(b)(3)

Class certification is permissible if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id. "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Wang, 2013 WL4712728, at *5 (citation and internal quotation marks omitted). Plaintiffs have not shown that common questions of law or fact predominate over individual questions or that the proposed classes are sufficiently cohesive to warrant certification under Rule 23(b)(3).

As evidenced by the motions for summary judgment, determination of the deadline by which Citi was required to provide either a permanent modification or a written denial cannot be made simply by identifying the MED as stated in the TPP. The deadline may also have been affected by the parties' course of conduct, changes in income, inaccurately or incompletely reported income, oral and written representations regarding documentation still needed and other modification options, applicable Treasury Directives, and other considerations. (See, e.g., Docket Nos. 355, 356.) These determinations are critical to evaluating whether Citi breached the TPP, whether Plaintiffs are entitled to any damages as a result of the breach, and the amount of any such damages. Although the Court may not engage in "free-ranging merits inquiries at the certification stage," Amgen, 133 S. Ct. at 1194, it is clear that an evaluation of the merits of the proposed class claims would require significant individualized inquiry.

These same heterogeneity problems plague Plaintiffs' proposed promissory estoppel, implied covenant, and consumer protection classes. Individual representations made by Citi to individual plaintiffs are critically important in determining whether, under the state law of each proposed class, for example, reliance was reasonable, whether a reasonable consumer would be likely to be deceived, and whether a promise was clear.

Further, the proper measure of damages can be affected by a wide range of issues, many of which are unrelated to the MED. As Citi points out, some borrowers may default even on a modified payment. The addition of this factual scenario would greatly increase the difficulty of determining a classwide measure of damages. Plaintiffs have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

failed to propose a method of measurement that can be applied classwide and ties breach of contract and other legal theories to liability and a reliable measure of damages. Plaintiffs have failed to meet the requirements of Rule 23(b)(3).  See Comcast, 133 S. Ct. at 1433 (rejecting the concept that "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide" and requiring plaintiffs bringing an antitrust suit to "tie each theory of antitrust impact to a calculation of damages" (citation and internal quotation marks omitted)).

In addition, it is clear that a class action, as currently proposed by Plaintiffs, is not the superior means of dealing with the incredible variety of individual issues.

## IV.   CONCLUSION

Plaintiffs have failed to demonstrate that class certification is appropriate under Federal Rules of Civil Procedure 23(b)(1), (2), or (3).  Plaintiffs' motion for class certification is DENIED.

IT IS SO ORDERED.